QUESTION: Does the doctrine of sovereign immunity operate to confer sovereign immunity on independently insured private institutions which volunteer their services to the Florida Department of Health and Rehabilitative Services?
SUMMARY: Pursuant to Pub.L. 94-380, the Department of Health and Rehabilitative Services and volunteer private institutions acting on its behalf and under its guidance in the administration of swine flu vaccine are "program participants." The United States will be primarily liable for all claims for damages but will have a claim against any "program participant" for negligence in carrying out any obligation or responsibility in connection with the swine flu program. Since the State of Florida has enacted a limited waiver of sovereign immunity, the state will, to the extent of that waiver, be liable to the United States pursuant to the provisions of Pub.L. 94-380. Volunteer private institutions not acting in bad faith, maliciously, or in a manner exhibiting wanton and willful disregard of human rights, safety, and property would be entitled to have the State of Florida pay any civil judgment not to exceed $50,000 per claimant or $100,000 per occurrence for damages as a result of any act or omission of action within the scope of its agency or function in the swine flu program. No opinion is expressed as to the liability to the United States of either the State of Florida or the volunteer private institutions for amounts in excess of the limits of s. 768.28, F. S. Your question is answered to a large extent by Pub.L. 94-380, which was enacted by Congress on August 12, 1976. The purpose of the act, as indicated by its title, is: To amend the Public Health Service Act to authorize the establishment and implementation of an emergency national swine flu immunization program and to provide an exclusive remedy for personal injury or death arising out of the manufacture, distribution, or administration of the swine flu vaccine under such program. (Emphasis supplied.) Congressional intent is set forth in the act in the newly created42 U.S.C. § 274b(k)(1)(A)(i) and (ii): (k)(1)(A) The Congress finds that — (i) in order to achieve the participation in the program of the agencies, organizations, and individuals who will manufacture, distribute, and administer the swine flu vaccine purchased and used in the swine flu program and to assure the availability of such vaccine in interstate commerce, it is necessary to protect such agencies, organizations, and individuals against liability for other than their own negligence to persons alleging personal injury or death arising out of the administration of such vaccine; (ii) to provide such protection and to establish an orderly procedure for the prompt and equitable handling of claims by persons alleging such injury or death, it is necessary that an exclusive remedy for such claimants be provided against the United States because of its unique role in the initiation, planning, and administration of the swine flu program; and (Emphasis supplied.) 42 U.S.C. § 247b(k)(2)(A) then provides that: (2)(A) The United States shall be liable with respect to claims submitted after September 30, 1976 for personal injury or death arising out of the administration of swine flu vaccine under the swine flu program and based upon the act or omission of a program participant in the same manner and to the same extent as the United States would be liable in any other action brought against it under such section 1346(b) and chapter 171. . . . [Exceptions, not relevant here, have been omitted; emphasis supplied.] A "program participant" is then defined by42 U.S.C. § 247b(k)(2)(B) to include: the public or private agency or organization that provided an inoculation under the swine flu program without charge for such vaccine or its administration and in compliance with the informed consent form and procedures requirements prescribed pursuant to subparagraph (b) or paragraph (1) of this subsection, and the medical and other health personnel who provided or assisted in providing an inoculation under the swine flu program without charge for such vaccine or its administration and in compliance with such informed consent form and procedures requirements. (Emphasis supplied.) Thus, both the Department of Health and Rehabilitative Services and any volunteer private health agency participating in the swine flu immunization program are "program participants" if either agency provides inoculation without charge and in compliance with certain consent form procedures. I might note at this point that the words "without charge" would seem to refer to the administration of vaccine to citizens "without charge" to the citizen. I understand that, after you wrote your letter to me, you have been asked whether a private health agency may be reimbursed for its expenses and still qualify as a "program participant." Since the program is to be administered by the United States Department of Health, Education and Welfare, and liability claims are to be handled by the United States Attorney General, it would be more appropriate for you to direct that question to the officials directly responsible for administering the federal program. Public Law94-380 establishes an exclusive method for handling claims against "program participants." 42 U.S.C. § 247b(k)(3) provides: (3) The remedy against the United States prescribed by paragraph (2) of this subsection for personal injury or death arising out of the administration of the swine flu vaccine under the swine flu program shall be exclusive of any other civil action or proceeding for such personal injury or death against any employee of the Government (as defined in section 2671 of title 28, United States Code) or program participant whose act or omission gave rise to the claim. (Emphasis supplied.)
The United States Attorney General shall defend all civil actions brought against a "program participant." 42 U.S.C. § 247b(k)(4). Public Law 94-380 does not, however, completely shield a "program participant" from all potential liability. Subsection (7) of42 U.S.C. § 247b(k) provides that, if the United States makes payment to a claimant injured in the administration of the vaccine, the United States may recover from the "program participant" . . . that portion of the damages so awarded or paid, as well as any costs of litigation, resulting from the failure of any program participant to carry out any obligation or responsibility assumed by it under a contract with the United States in connection with the program or from any negligent conduct on the part of any program participant in carrying out any obligation or responsibility in connection with the swine flu program. The United States may maintain such action against such program participant in the district court of the United States in which such program participant resides or has its principal place of business. (Emphasis supplied.) This section is consistent with subsection (k)(1)(A)(i) previously quoted which expresses congressional intent that participant agencies, organizations, or individuals be protected against liability "for other than their own negligence." Thus, a "program participant" may be liable to the United States for its own negligence in carrying out "any obligation or responsibility in connection with the swine flu program." The only liability, therefore, that remains for a "program participant" is a potential liability for negligence in the administration of the "obligations" or "responsibilities" of the program. Presumably these obligations will be defined by HEW. Whether private volunteer institutions may be ultimately liable to the United States for such negligence is a very difficult question that involves principles of agency, state sovereign immunity, waiver of sovereign immunity, and the effect of Pub.L. 94-380. Before discussing the potential liability of volunteer health institutions it will be necessary to examine the potential liability of the State of Florida to the United States and determine the nature of the relationship between the Department of Health and Rehabilitative Services and the volunteer agencies. The Department of Health and Rehabilitative Services is a state agency and therefore partakes of the state's sovereign immunity from liability for torts committed by its officers and employees in the scope of their employment and in the course of providing health services on a statewide basis to Florida citizens. Loucks v. Adair, 312 So.2d 531 (1 D.C.A. Fla., 1975), cert. den.,327 So.2d 33 (Fla. 1976). Immunity of the Department of Health and Rehabilitative Services as a state agency would appear to exist regardless of any distinction between "proprietary" and "governmental" functions premised upon whether the patient or citizen pays for the services rendered. See Loucks v. Adair, supra, 312 So.2d at 533; Department of Natural Resources v. The Circuit Court of the Twelfth Judicial Circuit, 317 So.2d 772, 774
(2 D.C.A. Fla., 1975). Pursuant to s. 768.28, F. S., however, the state has waived its immunity with respect to tort liability for state agencies including executive departments such as the Department of Health and Rehabilitative Services. The waiver of immunity is limited to $50,000 on any claim or judgment by one person or $100,000 for all claims arising out of the same incident or occurrence. Section 768.28(5).
Thus it is clear that, at least to the limits specified in s.768.28, F. S., the State of Florida is potentially liable to the United States pursuant to the provisions of Pub.L. 94-380 for the negligence of its officers, employees, and agents in the administration of swine flu vaccine. Since the State of Florida (and the Department of Health and Rehabilitative Services) can only act through its agents, and a principal is, generally speaking, liable for the torts of its agents (see Van Engers v. Hickory House, 104 So.2d 843, 844 [3 D.C.A. Fla., 1958]; Adelhem v. Dougherty, 176 So. 775 [Fla. 1937]), it becomes important to determine whether the volunteer private health institutions are agents of the state for administering flu vaccine. An "agency" is "a contract either express or implied upon a consideration, or a gratuitous undertaking, by which one of the parties confides to the other the management of some business to be transacted in his name or on his account, and by which that other assumes to do the business and render an account of it." King v. Young,107 So.2d 751, 753 (2 D.C.A. Fla., 1958). A critical feature of an agency relationship is the right of the principal to control the actions of the agent with regard to the details of the task to be accomplished. King v. Young, supra, 107 So.2d at 753; McCarty v. King County Medical Service Corp., 175 P.2d 653, 664 (Wash. 1946). An agency relationship is created by the consent of the parties and does not require consideration or compensation to the agent. Adelhem v. Dougherty, 176 So. 775, 777 (Fla. 1937); 3 Am. Jur.2d Agency s. 18, n. 7 and cases cited therein. From your letter and from conversations with your legal staff by telephone, it appears that the Department of Health and Rehabilitative Services (HRS) is unable to implement the vaccine program in larger population areas of the state without the assistance of volunteer private health institutions. The swine flu program has been initiated by the federal government, and the Department of Health, Education and Welfare (HEW) has promulgated guidelines for "program participants" to follow. HEW, however, has contact only with HRS and has no contact with the volunteer private agencies. You state that HRS alone has selected the private agencies, and HRS has the authority to terminate the relationship with private agencies. HRS has also promulgated guidelines to be followed by the volunteer agencies. Finally, you state that HRS intends to monitor and control the performance of the private agencies to insure that these institutions comply with HEW and HRS guidelines. Under these circumstances, it is my opinion that the volunteer private health institutions are agents of HRS for purposes of administering swine flu vaccine. (HRS may also be an agent of HEW in the administration of the swine flu program, but that agency relationship is not relevant to the question you pose.) The status as "agents" of the state is important because, when sovereign immunity exists, the public officers and employees of the sovereign are also immune from liability for acts or omissions committed in the course of their official authority and in line with their official duty. Loucks v. Adair, supra, 312 So.2d at 535; Martin v. Broward General Medical Center, 332 So.2d 84, 85 (4 D.C.A. Fla., 1976). Public officers and employees are particular kinds of state agents, but it would appear that all agents of the state share the immunity of the sovereign for acts committed within the scope of their agency. Section 768.28(9), F. S., provides: (9) No officer, employee, or agent of the state or its subdivisions shall be held personally liable in tort for any injuries or damages suffered as a result of any act, event, or omission of action in the scope of his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Subject to the monetary limitations set forth in subsection (5), the state shall pay any monetary judgment which is rendered in a civil action personally against an officer, employee, or agent of the state which arises as a result of any act, event, or omission of action within the scope of his employment or function. Thus, at least to the limits provided in s. 768.28(5), F. S. ($50,000 per claim, $100,000 per incident), it would appear that volunteer private health institutions, acting as agents of the State of Florida in the administration of swine flu vaccine, would be protected from claims by the United States by the provisions of s. 768.28(9), F. S. The state would pay any such claim arising out of an act or omission to act within the scope of the agency relationship unless the volunteer institution "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard for human rights, safety, or property." Section 768.28(9). Whether the State of Florida, or any volunteer agency acting on its behalf, may be liable to the United States for damages in excess of the limited waiver of sovereign immunity contained in s. 768.28, F. S., is a question of much greater complexity and beyond the proper scope of this opinion. The fundamental issue at stake is whether Congress may, consistent with the Tenth and Eleventh Amendment to the United States Constitution, effectively waive a state's sovereign immunity for tort claims for damages to citizens of this state or other states. If the claim of the United States against a state under the swine flu program may be characterized as an attempt to obtain contribution from a joint tortfeasor, Hill v. United States, 453 F.2d 839 (6th Cir. 1972), barring such a suit because of state sovereign immunity may be relevant. Moreover, liability for tortious acts strikes directly at the sovereign treasury of a state and raises serious questions of the power of Congress to modify basic principles of state sovereignty. Compare National League of Cities v. Usery, 49 L.Ed.2d 245 (1976), with Employees v. Missouri Public Health Department, 36 L.Ed.2d 251
(1973). I trust that you will appreciate and understand my inability to express an opinion as to this last issue and hope that my response has been helpful to you.