STATE, *ex rel.* CARY D. LANDIS, Attorney General, v. J. J. CRUME, *Chairman,* and W. M. HANKINS, B. D. THURSBY, J. H. GRAHAM and E. A. LATHAM, being members of and together constituting the Board of County Commissioners in and for Volusia County.

180 So. 38.
En Banc.
Opinion Filed March 30, 1938.

*Cary D. Landis,* Attorney General, and *Marvin C. McIntosh,* Assistant Attorney General, for Relator;

*W. J. Gardiner* and *Thomas N. Tappy,* for Respondents.

*John E. Mathews,* as *amicus curiae.*

TERRELL, J.—Information in Quo Warranto was filed in this Court by Relator as Attorney General of the State

of Florida challenging the authority of Respondents as the Board of County Commissioners of Volusia County to provide forty-five voting machines for experimental use in the primary election to be held in that County in May and the general election to be held in November of the current year.

To said information, there was filed a demurrer, a motion to quash, and return. The return admits that Respondents have provided forty-five voting machines for experimental use as the information charges but denies that any of them have been purchased. In other respects, the question raised by the answer is no different from that raised by the demurrer and the motion to quash. The cause is here for disposition on the issue raised by these pleadings. The questions of constitutional validity of the Act and the correctness of the procedure are not considered or adjudicated since the information makes a *prima* case.

It is agreed by counsel that the question presented is: "whether or not County Commissioners 'may provide for experimental use' at the forthcoming primaries and general election, of more than five voting machines without submitting the question to the voters of the County, and will such elections be valid, under the provisions of Sections 2 and 3 of Chapter 18,405, Laws of Florida, 1937."

This question turns on the interpretation of Sections 3 and 4 of Chapter 13893, Acts of 1929, as amended by Sections 2 and 3 of Chapter 18405, Acts of 1937, which are as follows:

"Section 2. The Board of County Commissioners of any county or the governing body of any municipality, may if it so elects, submit to the voters of such county or municipality at a general or special election, the question of whether or not it shall avail itself of the benefits of this Act. Providing, however, that a special election shall not be called for the sole purpose of determining this question;

And if a majority of the voters voting at such election approve, the said Board of County Commissioners of such county or the governing body of such municipality, *shall* thereupon adopt for use at elections any kind of voting machine that meets the requirements of this Act, and thereupon such voting machine *shall* be used at any and all elections held in such county or municipality or any part thereof for voting, registering and counting votes cast at such elections; provided, however, that the Board of County Commissioners of any County or the governing body of any Municipality may purchase, install, and use, not to exceed (5) five voting machines, meeting the requirements of this Act, for the purpose of experimenting with same in such districts or precincts as they may deem proper, without submission of the question to the voters of the county or municipality. Voting machines of different kinds may be adopted for use in different districts in the same county or municipality. *Provided further, that it shall be the mandatory duty of all municipalities of over five thousand inhabitants in counties in which the adoption of such machines has been approved, as herein provided, to use such machines in all elections held by such municipalities."*

"Section 3. The County Commissioners of any county, or the governing body of any municipality (*authorized by the last preceding section to adopt a voting machine*), may provide for the experimental use, at any election in one or more districts of a machine or machines (*which they might thereafter permanently adopt*) and the use of such machine or machines at such election shall be as valid for all purposes as if it, or they, had been permanently adopted."

In Section 2, the words "shall" as underlined were used in the place of "may" and the proviso at the conclusion of the section were the only amendments made to this section by the 1937 Act. In Section 3, the words parenthesized

were included in the 1929 Act but were omitted in the 1937. No other change was made in either section by the latter Act and none of the amendments have but little if any effect on the question we are called on to answer.

Both sections in terms authorize the Board of County Commissioners of any County or the governing body of any Municipality "to adopt for use or to use experimentally" a voting machine or machines. As to Section 2, the use is limited to five machines for demonstration purposes pending the election for adoption but as to Section 3, the use is limited only by the precincts of the County or the Municipality *for experimental purposes* "at any election" and when so used, the use shall be as valid as if permanently adopted.

Section 2, in other words, contemplates permanent adoption of voting machines and to that end, authorizes the Board of County Commissioners of any county or the governing body of any Municipality to submit to the voters at a general or special election (but if done in the latter, not to be called for that purpose alone) the question of whether or not it will avail itself of the benefits of the Act. If at such election, a majority of those participating vote affirmatively, the Board of County Commissioners or the governing body of the Municipality is authorized to adopt any kind of voting machine that meets the requirements of the Act, and when adopted, they shall be used for voting, registering, and counting votes cast at subsequent elections. The Act also provides that the Board of County Commissioners or the governing body of any Municipality may without submitting the question to the voters of the County or the Municipality, purchase, install, and use not exceeding five voting machines for the purpose of experimenting with them in such districts or precincts as they may deem proper.

Section 3 contemplates nothing more than experimentation with the view of its later adoption and to that end, authorizes the Board of County Commissioners or the governing body of a Municipality to "provide for the experimental use at any election in one or more districts of a machine or machines" and if done, use of such machines shall be as valid as if they had been permanently adopted.

In fine, both the title and sections of the Act quoted contemplate the use of election machines. If in the judgment of the County Commissioners or the governing body of the municipality, they should become a permanent institution of the County or Municipality, the procedure provided in Section 2 should be followed; on the other hand, as provided in Section 3, if the Board of County Commissioners or the governing body of any Municipality decides to experiment with voting machines solely with the view of sounding the sentiment for adoption later, they may borrow, accept the loan of, or provide for use otherwise than by purchase, in as many districts as they deem proper such number of voting machines as may be necessary to hold the election. When so used, the election shall be as valid as if the machines had been permanently adopted.

The terminology of the title and both sections of the Act amply support this conclusion when read as a whole. It is unfortunate that it is loosely drawn and difficult of construction but the purpose to provide two means of adopting or not the use of voting machines is perfectly apparent. If the procedure outlined in Section 2 is employed, the question is submitted to the people at a general or special election pending which five machines may be purchased and used for demonstration or experimental purposes and as a means of apprizing the people what they are voting for. If the procedure outlined in Section 3 is employed, no machines can be purchased, but one or more may be procured

by loan or otherwise for each precinct of the County or Municipality to be used at any election purely as an experiment or means of convincing the people whether or not they should be permanently adopted. It was brought out at the oral argument that election machines cost about one thousand dollars each and that they were expensive to man and service. In some of the Counties, provision for them at this rate will mean over one hundred thousand dollars first cost, so the fact of liberal means to approve or disapprove them and to advise the electorate prior thereto of their merit or demerit is wise.

In construing Acts of the Legislature, it is the duty of a Court to ascertain the legislative intent and give the provisions of the Act a field of operation to harmonize with such intent. The interpretation here given makes both sections consistent and workable while any other interpretation renders them in part inconsistent and unworkable. The fact of adoption for permanent or experimental purposes leads to this conclusion.

Having reached this conclusion, it follows that for experimental purposes only, as provided in Section 3, *supra,* County Commissioners are not limited to the use of five voting machines, but may without submitting the matter to a vote of the people provide without purchase and use as many machines as they deem expedient.

The motion to quash is therefore granted.

It is so ordered.

WHITFIELD and BROWN, J. J., concur.

BUFORD, J.—(concurring in part).—I can concur in most of what is said in the opinion prepared by Mr. Justice TERRELL, but I do not concur in the apparent conclusion that Section 3 as quoted in Mr. Justice TERRELL's opinion authorizes the County Commissioners to require the voters

to use the election machines in the several precincts of the county before the use thereof has been adopted by referendum vote of the people as the exclusive means and methods of voting in the precincts where the County Commissioners shall have provided such machines to be used at the election for experimental purposes.

As I construe the provisions of the Act, it means that the County Commissioners may provide machines to be used for experimental purposes "at any election in one or more districts" and that when such machines are provided the voters may either use the regular official ballot or use the machine and that the votes cast by use of the machine will be just as valid as if they had been cast by the use of the ballot in the manner heretofore obtaining.

As I construe the Act, it means that the machines can not be adopted as the exclusive method for voting in any election unless and until such machines have been adopted by referendum vote of the electors.