381 So.2d 698 (1980)
DISTRICT SCHOOL BOARD OF LAKE COUNTY, Sonny Walters, and Auto Owners Insurance Company, Petitioners,
v.
Robert TALMADGE, by His Next Friend and Natural Guardian, Billy Talmadge, and Billy Talmadge, Individually, Respondents.
No. 53716.
Supreme Court of Florida.
February 14, 1980.
Rehearing Denied April 18, 1980.
*699 Monroe E. McDonald, of Sanders, McEwan, Mims & McDonald, Orlando, for petitioners.
David M. Hammond, of Meyers, Mooney & Adler, Orlando, for respondents.
Michael P. McMahon, of Akerman, Senterfitt & Eidson, Orlando, and Jim Smith, Atty. Gen., and Horace Schow II, Asst. Atty. Gen., Tallahassee, for Jerome L. Barber, amicus curiae.
Stuart Simon, Dade County Atty., and Mark A. Dresnick, Asst. County Atty., Miami, for Dade County, Florida, amicus curiae.
Mel R. Martinez, of Billings, Frederick, Wooten & Honeywell, Orlando, for Bane Cheek and Fred Cheek, amicus curiae.
Larry Klein, West Palm Beach, for The Academy of Florida Trial Lawyers, amicus curiae.
George Stelljes, Jr., President for Florida Defense Lawyers Association, Jacksonville, amicus curiae.
ENGLAND, Chief Justice.
We here interpret one aspect of the state's waiver of sovereign immunity statute, against a background of conflicting district court decisions. Donner v. Hetherington, 370 So.2d 1225 (Fla. 3d DCA 1979); Talmadge v. District School Board, 355 So.2d 502 (Fla. 2d DCA 1978); Paul v. Heritage Insurance Co. of America, 363 So.2d 563 (Fla. 3d DCA 1978); Metropolitan Dade County v. Kelly, 348 So.2d 49 (Fla. 1st DCA 1977); Pennington v. Serig, 353 So.2d 107 (Fla. 3d DCA 1977). The issue presented is whether under subsection 768.28(9), Florida Statutes (1975), a state employee may be made a party defendant in an action for personal injuries allegedly occasioned by the employee's negligence while acting in the scope of his employment.
Robert Talmadge was a student at Tavares Middle School, a public school operated by the District School Board of Lake County, Florida. Talmadge brought suit against the Board, its insurance company, and Sonny Walters, a physical education instructor at the school, seeking damages for injuries he received while performing on a trampoline. The complaint alleged that during a physical education class, Walters ordered Talmadge to perform certain acrobatics on the trampoline. When Talmadge refused, Walters physically picked him up, placed him on the trampoline, and twice more ordered him to perform. It is alleged that Talmadge then attempted a flip, during which he injured his knee and teeth. Talmadge allegedly had minimal instruction regarding acrobatics and safety on the trampoline, and was not prepared to perform such activities safely.
Walters filed a motion to dismiss himself as a defendant, contending that subsection 768.28(9) immunized him from suit. The trial court granted the motion. On appeal, the second district court of appeal reversed, holding that the statute "acts only to indemnify an employee of the state for a monetary judgment entered against him as a result of negligent acts occurring within the scope of his employment, but does not operate as a bar against suing such an employee as a party defendant." 355 So.2d at 503. Walters and the other petitioners now challenge the district court's ruling on that point.
Article X, section 13 of the Florida Constitution states that "[p]rovision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating." Pursuant to this authorization, the legislature enacted section 768.28, waiving the state's *700 sovereign immunity in tort actions within certain express limitations. Prior to the enactment of the waiver statute, of course, Florida's public employees had been liable for their tortious acts. See, e.g., Davis v. Watson, 318 So.2d 169 (Fla. 4th DCA 1975), cert. denied, 330 So.2d 16 (Fla. 1976). Consequently, section 768.28 led to the coexistence of both governmental and employee liability, creating what has been termed a new "problem of coordination."[1] Subsection 768.28(9) is the legislature's attempt to treat this problem, since it addresses the effect which the introduction of governmental liability has on the liability or immunity[2] of the individual state employee.
Unfortunately, the language of subsection 768.28(9) appears on its face to be inconsistent. The first sentence reads:
(9) No officer, employee, or agent of the state or its subdivisions shall be held personally liable in tort for any injuries or damages suffered as a result of any act, event, or omission of action in the scope of his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. (emphasis added).
The second sentence, which the legislature added one year after the first,[3] provides:
Subject to the monetary limitations set forth in subsection (5), the state shall pay any monetary judgment which is rendered in a civil action personally against an officer, employee, or agent of the state which arises as a result of any act, event, or omission of action within the scope of his employment or function. (emphasis added).
Facially at least, the first sentence seemingly declares that public employees are not personally liable for employment negligence, while the second sentence seemingly provides that the state will pay (up to a stated amount) after personal liability has been determined.[4]
Petitioners attempt to reconcile the apparent inconsistency, contending that the two sentences of subsection (9) deal with two distinct situations. They argue that the first sentence makes public employees immune from suit, except in those instances where they act in bad faith, with a malicious purpose, or in a manner exhibiting wanton or willful disregard of human rights, safety or property. Only in these latter situations, they suggest, is the second sentence triggered, thus permitting the employee to be sued and obligating the state to indemnify him from any judgment.[5] This reading of the statute apparently was *701 adopted both in Metropolitan Dade County, where the court held that a Dade County bus driver's motion to dismiss should have been granted because the claim against him individually did not allege that he had acted in bad faith,[6] and in Pennington, where the court held that "[i]n the absence of any allegation or proof of bad faith or malicious purpose on their part, defendants are immune from personal liability under Section 768.28(9), Florida Statutes (1975)."[7]
Respondents, on the other hand, ask us to adopt an interpretation of subsection (9) to the effect that the provision acts only to indemnify public employees for monetary judgments entered against them, but does not render them immune from suit. They argue that it would be impossible for judgments to be rendered personally against public employees, in accordance with the second sentence, if the first sentence immunized those employees from suit. Moreover, the legislature would have declared unequivocally if it intended that public employees be given immunity from suit. This rationale is supported by the Talmadge decision below and by the Paul and Donner cases.[8]
Neither the parties nor amici[9] have brought to our attention any statutory or case authority in this state which reconciles the conflicting provisions of subsection 768.28(9). A survey of comparable statutes in other jurisdictions provides limited assistance in this regard, but is relevant for the contrasts it provides.
We have, on occasion, looked to the Federal Tort Claims Act and its applicable precedents for guidance in the area of sovereign immunity,[10] but the federal act contains no provision comparable to subsection (9).[11] That portion of the act which immunizes federal employees from liability for the negligent operation of motor vehicles while acting within the scope of their employment is not sufficiently similar to warrant any conclusion regarding the operation of subsection (9).[12]
An analysis of legislation in other jurisdictions is likewise nonconclusive,[13] as none contains a provision quite like subsection (9). Most state statutes are more specific *702 regarding the proper relationship between governmental and employee tort liability.
For example, Connecticut's sovereign immunity statute has a provision very similar to the seemingly immunizing first sentence of subsection (9). It provides that "[n]o state officer or employee shall be personally liable for damage or injury, not wanton or wilful, caused in the performance of his duties and within the scope of his employment."[14] It then provides, however, that "[a]ny person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter." Thus, the Connecticut statute is internally consistent by first providing state employees with immunity from liability and then explicitly directing that tort claims are to be filed against the state.[15] Subsection (9), of course, does not specify whether claims should be filed against the state, the employee, or both.
Tennessee takes a slightly different approach. It allows its public employees to be sued but only when the action may aid in compensating the plaintiff. It limits tort actions against government employees to those cases where the damages sought, or judgment entered, exceeds minimum statutory limits of insurance coverage or the actual amount of such coverage, whichever is greater. In those cases, the governmental entity must be made a party defendant to the action.[16]
Statutes limiting or preventing suits against public employees under some circumstances can be found in other states,[17] but virtually every American jurisdiction permits tort suits against both the government and its employees.[18] This incidence is relevant to our interpretation of section 768.28, for the absence of an explicit prohibition against suing public employees for their torts suggests that none was intended.
As suggestive as is the direction of other sovereign immunity statutes, a more compelling analysis emerges from our principles of statutory construction. This Court has recognized that "[w]here possible, it is the duty of the courts to adopt that construction of a statutory provision which harmonizes and reconciles it with other provisions of the same act." Woodgate Development Corp. v. Hamilton Investment Trust, 351 So.2d 14, 16 (Fla. 1977). Only one interpretation of subsection (9) will satisfy this obligation  one which gives content to each sentence of the provision.
We construe subsection (9) not to prevent a state officer, employee, or agent from being made a party defendant in an action under section 768.28. In fact, as we view the statute, both individual and joint suits are possible and, rather than providing public employees with immunity from suit, subsection (9) merely addresses the extent to which the state will be liable for their torts.
Liability outside section 768.28. Quite obviously, individual suits against an employee, but not against the state, are possible whenever the employee was not acting within the scope of his employment or, while within his employment, has acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." In either of these situations the first sentence of subsection (9) offers no immunity at all, as the employee's conduct falls outside the protections of the statute. The employee alone may be sued in these situations, *703 and the state can neither be made a defendant nor assigned responsibility for the payment of any judgment rendered against the employee. For actions outside the scope of the statute, of course, the employee's liability is simply governed by traditional, pre-existing legal principles for tort actions against public employees. Our conclusion in regard to these individual suits is supported by the vast weight of authority in this country.[19]
Virtually every existing right of indemnity enjoyed by public officials is subject to exclusions not only for action beyond the outer perimeters of their authority, but also for egregious action within those perimeters. Egregious action has been defined variously, but each definition seeks to ensure that the individual official ultimately bears personal liability in those situations where the need for deterrence and retribution is greater.[20]
Liability under section 768.28. For those actions which fall within the purview of section 768.28, plaintiffs have a range of litigation options:
(1) The plaintiff can invoke the provisions of section 768.28 and sue both the state and employee jointly. The state then becomes obligated, under the second sentence of subsection (9), to pay any judgments to the extent of the monetary limitations set forth in subsection (5).[21] The negligent employee remains personally liable for that portion of a judgment rendered against him which exceeds the state's liability limits.[22]
(2) The plaintiff can invoke the provisions of section 768.28 and sue the state alone. The state's liability, of course, would be limited by subsection (5).
(3) The plaintiff can sue the employee alone, without invoking section 768.28, under traditional legal principles regarding tort actions against public employees.
The foregoing interpretation of subsection (9) is the one most consistent not only with the language of section 768.28, but also with its purpose. We have noted that "section 768.28 evinces the intent of our legislature to waive sovereign immunity on a broad basis"[23] in order to provide more adequate compensation for victims of governmental torts. By allowing suits against negligent employees as well as the state, this objective is enhanced.[24]
Our interpretation of subsection (9) also harmonizes that provision with other related statutes.[25] For example, section 111.07, Florida Statutes (1977), authorizes any agency or political subdivision of the state to defend certain tort actions brought against their officers and employees. Section 111.06, Florida Statutes (1977), authorizes the defense of any warden, sheriff, and deputy sheriff "in any civil suit arising out of the performance of his duties," and enables the state "to indemnify such person" if a judgment is rendered. Lastly, *704 section 111.065, Florida Statutes (1977), permits the payment of all defense costs and reasonable attorney's fees in any criminal and civil cases against a law enforcement officer when the officer wins the action or it is dismissed. These statutes, in providing for the defense of certain lawsuits against public employees, would be rendered practically meaningless if subsection (9) immunized public employees from suit in most instances.[26]
Finally, our construction of this statute is supported by considerations of judicial economy and public policy. Joining a public employee and the state together as defendants in one action will facilitate discovery and help avoid a multiplicity of lawsuits. Payment of claims and judgments will be expedited since all interested parties will be joined in one action.[27] Most importantly, holding public employees personally responsible for their own negligence may provide an incentive for more careful performance of official duties and obligations.[28]
Our interpretation of subsection (9) continues the long-established policy in this state of holding public officers, employees and agents liable for their tortious acts. We hold that section 768.28 merely waives the state's preexisting immunity from suit, and that no immunity from suit for employees has been created. For the reasons expressed, the decision below is affirmed.
It is so ordered.
ADKINS, OVERTON and SUNDBERG, JJ., concur.
BOYD, J., concurs in part and dissents in part with an opinion.
BOYD, Justice, concurring in part and dissenting in part.
My reading of section 768.28(9), Florida Statutes (1975), is that officers, employees and agents of the state and its subdivisions can be held personally liable in tort for injuries or damages suffered as a result of any act, event, or omission of action in the scope of their employment or functions, amounting to simple or ordinary negligence. In such cases of negligence the state, its agency or subdivision is to be joined as a party defendant and shall satisfy any judgment rendered up to its statutory limit of liability. § 768.28(5), Fla. Stat. (1975).
Where an officer, employee, or agent of the state or a subdivision acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, personal judgment may be rendered against him. In such a case the state will not be a party defendant and will not be required to pay the judgment.
Since the state must satisfy judgments for ordinary negligence up to a limit of $50,000 per claim, the state is the real party in interest. Therefore the legislature intended the state to be named as a party defendant in such litigation. The state is to defend its employee and thereby defend itself. Surely the legislature did not intend for the state to have to pay a judgment entered against an employee personally who, for whatever reason, fails to vigorously defend the lawsuit. Due process requires that the state have an opportunity to defend against the claim. Furthermore, since the state is not liable for damages caused by the employee's willful and wanton acts, it should be allowed a forum in which to deny liability just as insurance companies are allowed a forum in which to assert *705 nonliability for judgments entered against their insureds.
It is my conclusion, therefore, that no judgment against the state for the negligence of an employee can be valid unless both the state and the employee are named as defendants with the state being liable for the first $50,000 per claim in cases of ordinary negligence. The employee is personally liable for amounts in excess of the statutory limits and is fully liable for damages caused by his willful, wanton or bad faith actions.
I do not agree that there is any legislative intent for employees to be held personally liable for torts committed in the scope of their employment outside of the operation of section 768.28. Public employees should not be subject to being sued in connection with acts, events, or omissions in the scope of their employment without the protection accorded them by this statute.
Although section 768.28 presents problems of construction with its complex and contradictory language, I conclude from it that the legislature intended the statute to apply to all agencies of state government and to the state's political subdivisions. If the legislature meant something different it should say so by clarifying the language of section 768.28.
NOTES
[1] Bermann, Integrating Governmental and Officer Tort Liability, 77 Colum.L.Rev. 1175, 1176 (1977).
[2] Our use of the term "immunity" in this decision denotes mere nonsusceptibility to suit under the statute. As in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010, 1012 n. 1 (Fla. 1979), "[w]e do not deal here with personal immunity of individual officers acting in their official capacity. This distinct principle of law is explored in cases such as McNayr v. Kelly, 184 So.2d 428 (Fla. 1966), and Rivello v. Cooper City, 322 So.2d 602 (Fla. 4th DCA 1975)."
[3] Ch. 74-235, § 1, Laws of Fla.
[4] Two commentators have criticized this "anomaly." See Seligman & Beals, The Sovereignty of Florida Municipalities: In-Again, Out-Again, When-Again, 50 Fla. B.J. 338 (1976). See also 1978 Op.Att'y Gen. Fla. 078-145 (December 21, 1978).
[5] The extent of the state's obligation was specified in subsection 768.28(5), which read:

Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $50,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state arising out of the same incident or occurrence, exceeds the sum of $100,000. However, a judgment or judgments may be claimed and rendered in excess of these amounts and may be settled and paid pursuant to this act up to $50,000 or $100,000, as the case may be, and that portion of the judgment that exceeds these amounts may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature.
Although subsection (5) has been amended since the injury in this case, Ch. 77-86, § 1, Laws of Fla., the changes do not affect this decision.
[6] 348 So.2d at 50. The court did not examine or analyze the inconsistencies in the language of subsection (9). Rather, it quoted and, apparently, relied solely on the first sentence of the provision in reaching its decision.
[7] 353 So.2d at 108. The Pennington court also failed to evaluate this troublesome provision. Pennington was implicitly overruled by another panel of the same court in Paul v. Heritage Ins. Co., 363 So.2d 563 (Fla. 3d DCA 1978).
[8] In Paul v. Heritage Ins. Co., 363 So.2d 563 (Fla. 3d DCA 1978), one panel of the third district court of appeal merely adopted the Talmadge court's interpretation of subsection 768.28(9). Another panel followed Talmadge and Paul in Donner v. Hetherington, 370 So.2d 1225 (Fla. 3d DCA 1979).
[9] Five amicus briefs were submitted in this proceeding. Our analysis follows mainly the majority positions asserted by the parties, however.
[10] See, e.g., Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979).
[11] As two commentators have stated aptly: "[The Federal Tort Claims Act] does not entertain the anomalous proposition of barring personal liability and providing for the indemnity of it at the same time." Seligman & Beals, supra note 4, at 341.
[12] 28 U.S.C. § 2679(b) (Supp. 1979) provides:

(b) The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property or personal injury or death, resulting from the operation by any employee of the Government of any motor vehicle while acting within the scope of his office or employment, shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against the employee or his estate whose act or omission gave rise to the claim.
In any event, section 2679(b) applies only to government drivers and "there is no comparable ... provision [in the federal act] with respect to the vast number of government employees in other categories. They are freely suable for their torts, and may be joined as codefendants with the United States when there is a basis for federal jurisdiction over them." L. Jayson, Handling Federal Tort Claims § 175.03 (1979).
[13] For a survey of the positions the states have taken with respect to governmental immunity, see Harley & Wasinger, Governmental Immunity: Despotic Mantle or Creature of Necessity, 16 Washburn L.J. 12, 33 (1976).
[14] Conn. Gen. Stat. § 4-165 (1979).
[15] Connecticut takes a different approach with regard to municipal employees. If suit is brought against both the municipality and its employee, the municipality becomes liable for all damages caused by the employee. Id. § 7-465.
[16] Tenn. Code Ann. § 23-3322 (Cum.Supp. 1978).
[17] Many sovereign immunity statutes provide that a judgment against the state in an action under the statute constitutes a complete bar to any action by the claimant against the negligent employee. See, e.g., Haw. Rev. Stat. § 662-10 (1976); Ind. Code Ann. § 34-4-16.5-5 (Burns Cum.Supp. 1979); Tex. Rev. Civ. Stat. Ann. art. 6252-19(12)(a) (1974).
[18] Bermann, supra note 1, at 1213.
[19] See Bermann, supra note 1, at 1190-91, and authorities cited therein.
[20] Id. at 1191 (footnote omitted).
[21] The court below held that subsection (9) requires the state to "indemnify" public employees for monetary judgments entered against them. This is not wholly accurate, because subsection (9) goes beyond mere reimbursement and requires the state to pay judgments directly. Professor Bermann has characterized the situation as follows, "Today, statutes frequently authorize or even compel the government to indemnify its officers. A few state legislatures [e.g.  Florida] have taken the logical next step of requiring the government to satisfy those judgments directly." Bermann, supra note 1, at 1191 (footnotes omitted).
[22] Judgments in excess of the limitations in subsection (5) can also "be reported to the legislature, but may be paid in part or in whole only by further act of the Legislature." § 768.28(5), Fla. Stat. (1975).
[23] Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010, 1022 (Fla. 1979).
[24] Indeed, it would undermine the purpose of section 768.28 to withdraw preexisting remedies from the victims of governmental torts.
[25] It is our obligation, where possible, to construe statutes so that they operate in harmony with each other. See State ex rel. School Bd. v. Department of Educ., 317 So.2d 68 (Fla. 1975). See also note 26 infra.
[26] As noted in State ex rel. Landis v. Crume, 131 Fla. 848, 853, 180 So. 38, 41 (1938):

In construing acts of the Legislature, it is the duty of a court to ascertain the legislative intent and give the provisions of the act a field of operation to harmonize with such intent. The interpretation here given makes [the] sections consistent and workable, while any other interpretation renders them in part inconsistent and unworkable.
[27] See L. Jayson, supra note 12, at § 176.02.
[28] But see Bell, Proposed Amendments to the Federal Tort Claims Act, 16 Harv. J. on Legis. 1 (1979), which argues against exposing public employees to the time, expense, and possible embarrassment of a lawsuit.