Mr. John W. Burton Attorney for Hardee County School Board Burton Evers, P.A. Post Office Drawer 1729 Wauchula, Florida 33873
Dear Mr. Burton:
This is in response to your request for an opinion on substantially the following question:
 WHICH LOCAL GOVERNMENTAL UNIT HAS THE RESPONSIBILITY TO FURNISH SCHOOL CROSSING GUARDS ON STREETS LOCATED WITHIN A MUNICIPALITY?
Your question requires the analysis of the respective liabilities of the school district, the county and the municipality, and therefore the City of Wauchula and Hardee County have joined in this request for an opinion. According to information supplied to this office, the streets and intersections at which the school crossing guards are necessary are all located within the municipal boundaries of the City of Wauchula.
My research has failed to disclose, nor have you brought to my attention, a statute which directly addresses the issue of the financial responsibility for providing school crossing guards at intersections located within the boundaries of a municipality. However, a review of the pertinent statutes relating to school zones, traffic control, and hazardous walking conditions reveal a legislative scheme for the identification of dangerous crossing situations and a procedure for the notification and elimination of such dangers. See, Wakulla County v. Davis, 395 So.2d 540
(Fla. 1981) (law should be construed together and in harmony with any other statute relating to same purpose even though statutes not enacted at same time); District School Board of Lake County v. Talmadge, 381 So.2d 698 (Fla. 1980); Mann v. Goodyear Tire Rubber Co., 300 So.2d 666 (Fla. 1974); Florida Jai Alai, Inc. v. Lake Howell Water Reclamation District, 274 So.2d 522 (Fla. 1973). And see, Ferguson v. State, 377 So.2d 709 (Fla. 1979) (statutes which relate to same or closely related subject or object are related as in pari materia and should be construed together and compared together; courts will view entire statutory scheme to determine legislative intent).
Section 234.021, F.S., sets forth the procedure for the identification and elimination of hazardous walking conditions for school children. Subsection (2)(a) thereof provides in pertinent part:
 When a request for review is made to the district superintendent of schools or his designee concerning a condition perceived to be hazardous to students in that district who live within the 2-mile limit and who walk to school, such condition shall be inspected by a representative of the school district and a representative of the local governmental entity where the perceived hazardous condition exists. . . . Upon a determination that a condition is hazardous to such students, the district school board shall request a determination from the state or local governmental entity having jurisdiction regarding whether the hazard will be corrected and, if so, regarding a projected completion date. State funds shall be allocated for the transportation of students subjected to such hazards, provided that such funding shall cease upon correction of the hazard or upon the projected completion date, whichever occurs first.
Paragraph (b) of s. 234.021(2) places a responsibility upon the district school boards and the local governmental entities to work cooperatively to identify conditions which are hazardous to students who must walk to school. The statute further provides, however, that it is "intended that state or local governmental entities having jurisdiction correct such hazardous conditions within a reasonable period of time." (e.s.) See, s. 234.021(3), F.S., which specifies criteria for the determination of hazardous walking conditions, specifically paragraph (b) which provides that for walkways perpendicular to the road,
 It shall be considered a hazardous walking condition with respect to any road across which students must walk in order to walk to and from school:
 1. If the traffic volume on such road exceeds the rate of 360 vehicles per hour, per direction (including all lanes), during the time students walk to and from school and if the crossing site is uncontrolled. For purposes of this subsection, an "uncontrolled crossing site" is defined as an intersection or other designated crossing site where no crossing guard, traffic enforcement officer, or stop sign or other traffic control signal is present during the times students walk to and from school.
 2. If the total traffic volume on such road exceeds 4,000 vehicles per hour through an intersection or other crossing site controlled by a stop sign or other traffic control signal, unless crossing guards or other traffic enforcement officers are also present during the times students walk to and from school.
Thus where traffic is at or below a certain volume, the provision of a crossing guard or traffic enforcement officer is one means, along with a stop sign or other traffic control signal, by which the hazardous condition can be eliminated. However, where the traffic volume exceeds the specified rate, the hazardous walking condition may only be eliminated by providing crossing guards or other traffic enforcement officers.
Section 235.19(6), F.S., also concerns the identification and elimination of conditions which endanger or threaten the lives, health or safety of students walking or being transported to and from school, and provides:
 When a school board discovers or is aware of an existing hazard on or near a public sidewalk, street, or highway directly adjacent to a school site and the hazard endangers the life or threatens the health or safety of students who walk or are transported regularly between their homes and the school in which they are enrolled, the school board shall, within 24 hours after discovering or becoming aware of the hazard, excluding Saturdays, Sundays, and legal holidays, report such hazard to the governmental entity within the jurisdiction of which the hazard is located. Within 5 days after receiving notification by the school board, excluding Saturdays, Sundays, and legal holidays, the governmental entity shall investigate the hazardous condition and either correct it or provide such precautions as are practicable to safeguard students until the hazard can be permanently corrected. However, if the governmental entity which has jurisdiction determines upon investigation that it is impracticable to correct the hazard, or if the entity determines that the reported condition does not endanger the life or threaten the health or safety of students, the entity shall, within 5 days after notification by the school board, excluding Saturdays, Sundays, and legal holidays, inform the board in writing of its reasons for not correcting the condition. After the 5-day period has elapsed, the governmental entity shall indemnify the school board from any liability with respect to injuries, if any, arising out of the hazardous condition. (e.s.)
This provision places an affirmative duty upon the governmental entity within whose jurisdiction the hazard is located to correct the hazard and imposes, if such governmental entity fails to correct the hazard within the five day period, a legal responsibility on such governmental entity to indemnify the school board from any liability with respect to injuries that arise out of the hazardous conditions. Based upon the foregoing statutory provisions, considered in pari materia, it appears that the statutes contemplate that within the municipal boundaries, the municipality is the local governmental entity responsible for furnishing school crossing guards where necessary to eliminate hazardous walking conditions while the county has such responsibility for crossings located in the unincorporated areas of the county. The statutes, however, impose an affirmative duty upon all affected local governmental entities to work cooperatively with the district school boards to identify and eliminate hazardous walking conditions for school children.
Failure to correct such condition or to take certain precautions until the hazardous condition can be corrected may subject the municipality or county to liability.
Reinforcing this legislative scheme are provisions of s. 316.1895, F.S., providing for the establishment, maintenance and enforcement of school speed zones. Subsection (2)(b) states: "The county shall have the responsibility to maintain a school zone located outside of any municipality and on a county road." Subsection (2)(c) states: "A municipality shall have the responsibility to maintain a school zone located in a municipality." Subsection (2)(d) states: "For the purposes of this section, the term `maintained' with respect to any school zone means the care and maintenance of all school zone signs, markers, traffic control devices, and pedestrian control devices." While these provisions do not expressly provide for the furnishing of school crossing guards by the municipality or the county, they are consistent with the other requirements of law and establish which units of local government are responsible for the maintenance of school speed zones and ultimately the safety of school children.
The 1985 Legislature provided a new method for the funding of school crossing guard programs for counties and municipalities and thereby reinforced the conclusion that such local governments have the financial responsibility for the provisions of such safety personnel. See, Ch. 85-255, Laws of Florida, effective October 1, 1985, amending ss. 34.191 and 316.660, F.S., and s. 318.18, F.S. (1984 Supp.), to provide a funding mechanism for school crossing guard programs. Subsection (7) was added to s. 318.18, F.S. (1984 Supp.), to provide:
 In addition to any civil penalties imposed by this section, the clerk of the court is authorized, upon approval of the board of county commissioners of said county, to assess an additional penalty of up to $4 per violation for the purpose of funding a county or municipal school crossing guard program. (e.s.)
Section 2, Ch. 85-255, Laws of Florida. And see, s. 1, Ch. 85-255, which adds subsection (5) to s. 34.191, F.S., to provide: "The additional penalties collected pursuant to s. 318.18(7) shall be paid monthly, in accordance with s. 318.21, to the local governmental entity administering a school crossing guard program." See also, s. 3, Ch. 85-255, amending s. 316.660. These provisions provide a means whereby municipalities and counties can fund their school crossing guard programs.
In light of the above and in conclusion, it is therefore my opinion, until and unless judicially or legislatively determined otherwise, that where hazardous walking conditions exist for school children, the district school board and the local governmental entity having jurisdiction over the crossing have a responsibility to work cooperatively to eliminate the hazardous condition and the provision of school crossing guards is one means by which such hazardous conditions can be eliminated. Where the crossing is located within the city boundaries, as in the instant inquiry, I am of the opinion that the municipality is responsible for furnishing such school crossing guards, while the county has such responsibility where the crossing is located in the unincorporated areas of the county.
Sincerely,
Jim Smith Attorney General
Prepared by:
Craig Willis Assistant Attorney General