Honorable Eugene R. Lytton, Sr. County Commissioner District Two 3180 Overseas Highway Bay Point Key West, Florida 33040
Dear Mr. Lytton:
I have received your request for an Attorney General's Opinion. Based upon subsequent communications with your office, your questions are restated as follows:
 1. IS THE MONROE COUNTY LAND AUTHORITY A "STATE AGENCY OR SUBDIVISION" FOR THE PURPOSES OF s. 768.28, F.S. (1986 Supp.)?
 2. ARE THE EMPLOYEES OF THE LAND AUTHORITY STATE OR COUNTY EMPLOYEES FOR PURPOSES OF PARTICIPATING IN THE STATE RETIREMENT SYSTEMS?
 3. WHAT IS THE PERSONAL LIABILITY OF OFFICERS OF THE LAND AUTHORITY FOR ACTS PERFORMED IN THEIR OFFICIAL CAPACITY?
 4. WHAT WOULD BE THE EFFECT OF THE REVOCATION OF THE STATUTORY AUTHORITY UNDER CH. 120, F.S., WHICH HAS BEEN GRANTED TO THE LAND AUTHORITY BY s. 380.0666(9), F.S. (1986 SUPP.)?
 5. IS THE LAND AUTHORITY AUTHORIZED TO EXERCISE QUASI-JUDICIAL POWERS AND ADJUDICATE CONTROVERSIES?
6. DOES THE LAND AUTHORITY POSSESS CONDEMNATION AUTHORITY?
In ss. 380.0661-380.0675, F.S. (1986 Supp.), the Legislature has established a "mechanism to equitably deal with the challenges of implementing comprehensive land use plans developed pursuant to the area of critical state concern program, which challenges are often complicated by the environmental sensitivity of such areas." Section 380.0661(1), F.S. (1986 Supp.). The Legislature has authorized the creation of a "land authority" as "a body politic which would have . . . the flexibility to address plan implementation innovatively and [act] as an intermediary between individual landowners and the governmental entities regulating land use." Section 380.0661(2), F.S. (1986 Supp.). Section380.0663(1), F.S. (1986 Supp.), provides for the creation of such "land authorities":
 Each county in which one or more areas of critical state concern are located is authorized to create, by ordinance, a public body corporate and politic, to be known as a land authority, which may be renamed by the governing board of the county. The governing body of the land authority shall be the governing board of the county. For the purposes of this act, the governing body of the land authority shall be referred to individually or collectively as the members or membership of the land authority, whichever is appropriate.
Pursuant to the above authority, Monroe County enacted ordinance number 031-1986 creating the Monroe County Comprehensive Plan Land Authority.
As Attorney General Opinions address only questions requiring an interpretation of state law, no comment is expressed regarding Monroe County Ordinance No. 031-1986; rather my comments are limited to a discussion of the state statutory provisions governing land authorities.
QUESTIONS ONE AND THREE
As questions one and three are interrelated, they will be answered together.
Section 768.28, F.S. (1986 Supp.), represents a legislative waiver of immunity from tort liability for the state "and for its agencies or subdivisions" to the extent provided in the act. See, s. 768.28(1), F.S. (1986 Supp.), which states in part:
 Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act.
The statutory waiver is limited to $100,000 on any claim or judgment by one person or $200,000 for all claims arising out of the same incident or occurrence. Section 768.28(5), F.S. (1986 Supp.). But see, Avallone v. Board of County Commissioners of Citrus County, 493 So.2d 1002 (Fla. 1986) (the "purchase of tort liability insurance by a government entity, pursuant to section 286.28, constitutes a waiver of sovereign immunity up to the limits of insurance coverage and . . . this contingent waiver is independent of the general waiver in section 768.28").
As defined in s. 768.28(2), F.S. (1986 Supp.), the phrase "state agencies or subdivisions" includes "independent establishments of the state; counties and municipalities; and corporations primarily acting as instrumentalities or agencies of the state, counties, or municipalities." Cf., s. 1.01(9), F.S., defining, inter alia, a "political subdivision" to include "all other districts in this state."
I am of the opinion that a land authority created pursuant to s.380.0663, F.S. (1986 Supp.), as "a public body corporate and politic" with the powers described in the act is included within the scope of s. 768.28(2), F.S. (1986 Supp.). Cf., AGO's 87-38 (fire control district), 86-74 (hospital district), 79-13 (canal authority), and 78-33 (housing authority), concluding that the special districts considered therein were "state agencies or subdivisions" for purposes of s. 768.28, F.S. (1986 Supp.).
Subsection (9)(a) of s. 768.28, F.S. (1986 Supp.), states that:
 No officer, employee, or agent of the state or any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. However, such officer, employee, or agent shall be considered an adverse witness in a tort action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of his employment or function. . . .
This subsection provides that the exclusive remedy for damage suffered as the result of an act or omission of an officer, employee, or agent of the state or its subdivisions shall be action against the governmental entity, or the head of such entity in his or her official capacity unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety or property. See generally, District School Board of Lake County v. Talmadge, 381 So.2d 698, 702 (Fla. 1980); Hambley v. State, Department of Natural Resources, 459 So.2d 408 (1 D.C.A.Fla., 1984); for a discussion of willful and malicious conduct within the meaning of s. 768.28(9), F.S. (1986 Supp.).
Thus, provided that the members of the Monroe County Land Authority do not act in bad faith or maliciously or in a manner exhibiting a wanton and willful disregard of human rights, safety, or property, they are not personally liable in tort for injuries or damages suffered as a result of any act, event or omission of action within the scope of their official duties as members of the authority. Rather, the exclusive remedy for such injury or damage is an action against the district or its governing board.
QUESTION TWO
You ask whether employees of a land authority qualify for participation in the statutorily prescribed retirement systems for certain officers and employees of the state and the counties. See, Ch. 121, F.S. (1986 Supp.), and Ch. 122, F.S.
Any question relating to eligibility for participation in the state retirement programs must be addressed to the Division of Retirement of the Department of Administration. See, s.121.031(1), F.S., and s. 122.13, F.S., authorizing the Division of Retirement of the Department of Administration to administer the provisions of those chapters. Accordingly, I must decline to render an opinion on this matter.
QUESTION FOUR
Pursuant to s. 380.0666(9), F.S. (1986 Supp.), a land authority is authorized
 [t]o make rules pursuant to the provisions of chapter 120 necessary to carry out the purposes of this act and to exercise any power granted in this act.
Chapter 120, F.S., represents the Legislature's scheme for standardizing the rulemaking and adjudicative procedures used by administrative agencies. Section 120.72, F.S. Any amendment or repeal of s. 380.0666(9), F.S. (1986 Supp.), would have to be accomplished by the Legislature. See, Straughn v. Camp,293 So.2d 689 (Fla. 1974), appeal dismissed, 419 U.S. 891 (Fla. 1974).
In addition, authorities described in Ch. 380 are included within the definition of "[a]gency" in s. 120.52(1)(b). Therefore, any effective amendment or repeal of s. 380.0666(9), supra, would also have to address s. 120.52(1)(b). This office cannot, however, anticipate what effect the repeal or amendment of s. 380.0666(9), F.S. (1986 Supp.), would have on the powers of a land authority.
QUESTIONS FIVE AND SIX
As these questions involve the same principles of law, I will consider them together.
Florida courts have established that an administrative agency or officer possesses no inherent power and may exercise only such authority as expressly or by necessary implication is conferred by law. See, e.g., State ex rel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628 (1 D.C.A.Fla., 1974), cert. dismissed,300 So.2d 900 (Fla. 1974). In addition, if any reasonable doubt exists as to the lawful existence of a particular power, it should not be exercised. See, White v. Crandon, 156 So. 303, 305
(Fla. 1934).
With the exception of s. 380.0666(9), F.S., which authorizes land authorities to make rules pursuant to Ch. 120, F.S., including those provisions for public hearings on proposed rules (e.g., s.120.54[3][a], I am not aware of, nor have you directed my attention to, any statutory authority for a land authority to exercise quasi-judicial powers. See, s. 18, Art. I, State Const., which provides that "[n]o administrative agency shall impose a sentence of imprisonment, nor shall it impose any other penalty except as provided by law."
Sections 380.0661-380.0675, F.S. (1986 Supp.), do not specifically authorize a land authority to exercise the power of condemnation nor is that power one which may be necessarily or reasonably implied from the powers specifically granted in the act. Cf., s.380.0666(3), F.S. (1986 Supp.), authorizing a land authority "[t]o acquire and dispose of real and personal property . . . to acquire interests in land by means of land exchanges; and to enter into all alternatives to the acquisition of fee interests in land. . . ."; subsection (7), supra, which gives a land authority the power "[t]o contract for and to accept gifts, grants, loans, or other aid from the United States Government or any person or corporation, including gifts of real property or any interest therein."
Further, condemnation proceedings are statutory proceedings allowed and required to be taken in the exercise of the power of eminent domain. Condemnation is not a common-law action and the method by which the power of eminent domain is to be exercised is dependent upon the constitutional or statutory provisions involved. See generally, 29A C.J.S. Eminent Domain s. 209, pp. 931-932 (1965), Marvin v. Housing Authority of Jacksonville,183 So. 145 (Fla. 1938). Compare, e.g., s. 127.01(a), F.S., delegating the power of eminent domain to counties; s. 166.411, F.S., authorizing municipalities to exercise the power of eminent domain for certain, specified purposes.
Therefore, except to the extent that land authorities may enact rules pursuant to Ch. 120, F.S., and hold public hearings as prescribed therein, land authorities possess no quasi-judicial powers to hear or adjudicate matters. Further, in the absence of any specific statutory authorization, a land authority may not condemn property or exercise the power of eminent domain nor does the land authority possess any implied authority to exercise such powers.
SUMMARY
It is my opinion, until legislatively or judicially determined otherwise, that:
 1. A land authority created pursuant to s. 380.0663, F.S. (1986 Supp.), is within the definitional scope of s. 768.28, F.S. (1986 Supp.), as a "state agency or subdivision" and is therefore subject to actions to recover damages in tort for money damages as specified in s. 768.28(5), F.S. (1986 Supp.).
 2. Any determination of whether the employees of a land authority are state or county employees for purposes of participation in state retirement programs must be made by the Division of Retirement of the Department of Administration.
 3. Because a land authority comes within the definitional scope of s. 768.28, F.S. (1986 Supp.), the officers, employees or agents of a land authority are not personally liable in tort for injuries or damages suffered as a result of any act, event or omission occurring within the scope of their employment unless such officer, employee or agent acts in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety or property.
 4. This office cannot speculate as to what the effect of the repeal or amendment of s. 380.0666(9), F.S. (1986 Supp.), would have on the powers of a land authority.
 5. With the express exception of authority to make rules pursuant to Ch. 120, F.S., this office cannot conclude that a land authority possesses quasi-judicial powers.
 6. Without specific, express statutory authority for the exercise of the condemnation power, a land authority possesses no power to condemn property.
Finally, I would note that s. 380.0665, F.S. (1986 Supp), authorizes the executive director of a land authority to employ legal counsel. To advise the Monroe County Land Authority on the legal questions which will inevitably arise in implementing this new legislative scheme, you, as chairperson of the authority, may wish to consider the advisability of retaining counsel for the authority.
Sincerely,
Robert A. Butterworth Attorney General
Prepared by: Gerry Hammond
Assistant Attorney General