312 So.2d 531 (1975)
Nancy LOUCKS, As Mother and Next Friend of Lawrence D. Whittington, a Minor, and Nancy Loucks, Individually, Appellant,
v.
C.H. ADAIR, M.D., Individually and As Superintendent of G. Pierce Wood Memorial Hospital, et al., Appellees.
No. W-191.
District Court of Appeal of Florida, First District.
May 20, 1975.
*532 Tom Fairfield Brown, and Lawrence E. Fuentes, Tampa, for appellant.
James G. Mahorner, Tallahassee, for appellees.
McCORD, Judge.
This is an appeal from a final order dismissing appellant's complaint. The complaint was filed on behalf of Lawrence D. Whittington against C.H. Adair, M.D., superintendent of the G. Pierce Wood Memorial Hospital (a state mental hospital) where Whittington was confined; the Department of Health and Rehabilitative Services of the State of Florida, Division of Mental Health; and J.P. Dobson, M.D., a state physician at the hospital, alleged that defendants had not provided adequate security to prevent the escape of Whittington and that his escape resulted in his sustaining physical injury. The complaint alleged further that Whittington was involuntarily committed to the hospital by court order and was charged for the services rendered from the time of such admission; that his condition was diagnosed as schizophrenic paranoid type and that defendants knew that he had on prior occasions attempted suicide and had attempted to escape from other mental institutions having at such times inflicted serious bodily injury upon himself. The trial court, in a thorough and well-reasoned order, concluded that sovereign immunity barred the action and that such immunity was not waived by § 394.459(13), Florida Statutes. In his order the learned trial judge below cited this court's opinion in Buck v. McLean, Fla.App. (1st), 115 So.2d 764, in support of his ruling and stated that both sides relied upon the Supreme Court's opinion in Suwannee County Hospital Corp. v. Golden, Fla., 56 So.2d 911. We quote with approval the following analysis of the law contained in the trial judge's order:
"3. The Golden case, supra, was an action by a paying patient at a hospital operated *533 by a non-profit corporation created pursuant to a special act setting up a county hospital district. The enabling act also provided that the corporation would not be liable for the negligence of any of its officers or employees or doctors, surgeons or nurses who may be engaged in work there. The action sought and succeeded in recovery of damages for personal injuries incurred by the patient due to burns received from negligent application of hot water bottles to her limbs while she was unconscious following an operation. The Court held that the functions were proprietary and not governmental and that recovery was permitted and that there was a constitutional right of recovery which could not be divested by attempted statutory immunization. It was held that the paying patient in the public hospital was entitled to the same rights as would have been the case had the hospital been a private one. It was observed by the Court that hospitals operated like the Suwannee County non-profit corporation `are not part of any statewide system maintained at public expense so all who become afflicted, may, regardless of their individual worth, have the advantages of professional nursing, medical attention, and modern scientific apparatuses without cost to them.'
4. The plaintiff contends that the Golden case, supra, establishes the principle that a county operated hospital does not enjoy sovereign immunity from an action for negligence resulting in injury to a paying patient of such hospital and that the Constitutional command, in Sec. 21 of Art. 1, Fla. Const. 1968, that `The Courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay' operates to give such rights. It is further reasoned that as a county is merely a political subdivision of the state the same principle would apply when the hospital is operated by the state department. It is also contended that the Golden case has been followed by Butts v. County of Dade [Fla.App.], 178 So.2d 592; West Coast Hospital Association v. Hoare [Fla.], 64 So.2d 293, and Smith v. Duval County Welfare Board [Fla.App.], 118 So.2d 98.
5. The defendants argue that the Golden case, supra, was fully considered in Buck v. McLean, supra, and the Court there commented on the language of the Supreme Court in the Golden case, which is quoted in paragraph 3 above, to the effect that the Suwannee County Hospital Corporation was `not a part of any statewide system maintained at public expense'. It was observed in Buck v. McLean, supra, that `Had the contrary been true, the opinion indicates that the corporation would have been considered a state agency, discharging a governmental purpose, and therefore immune from tort liability just as are counties and county boards of public instruction'.
6. It has never been held by a Florida Appellate Court, (or at least no case has been cited nor has personal research uncovered one) that a state department or division of the executive branch of government is subject to tort action. Cases involving counties and other political subdivisions of particular localities have held that there is liability arising out of proprietary functions, as distinguished from governmental functions. However, this has not been extended to statewide activities of departments and divisions.
7. The Court concludes that the cases which have been cited and which permit recovery for torts of local political subdivisions in performance of proprietary functions are not in point in the case sub judice. In addition to the implication that Section 21 of Article I, Fla. Const. 1968, does not require suppression of sovereign immunity to statewide hospital systems which extend services to both paying and non-paying patients, the status of the plaintiff was not that of a voluntary paying patient. He was the *534 subject of a court order of involuntary commitment under the Baker Act pursuant to F.S. 394.467. Thus, even if arrangements were made in his behalf to pay a specified sum for his treatment he would not be in the same relationship as those patients in ordinary hospitals wherein governmental procedures were not involved in their admission. The defendants here are not engaged in purely proprietary functions but are primarily performing duties pursuant to the police powers of the state to protect public health and safety."
The trial judge next commented on appellant's contention that in § 394.459(13), Florida Statutes, the legislature has created a new cause of action in favor of mental patients in state hospitals in the Baker Act. That statute provides as follows:
"Liability for violations.  Any person who violates or abuses any rights or privileges of patients provided by this act shall be liable for damages as determined by law. Any person who acts in good faith in compliance with the provisions of this part shall be immune from civil or criminal liability for his actions in connection with the admission, diagnosis, treatment, or discharge of a patient to or from a facility. However, this section shall not relieve any person from liability if such person is guilty of negligence."
Regarding such contention, the trial judge reasoned as follows:
"9. The provision appears to seek to limit liability rather than to create new causes of action. Its purpose is to protect those who act in good faith in compliance with the law even though they would otherwise be liable under existing court decisions. It refers to the violation or abuse of any rights or privileges of patients `provided by this act'. Such rights are set forth in F.S. 394.459 as (1) right to individual dignity; (2) right to treatment regardless of ability to pay; (3) right to informed patient consent for certain surgical or electroconvulsive treatments; (4) right to suitable treatment administered skillfully, safely and humanely with full respect to dignity and personal integrity; (5) right to communications and visits; (6) right to care for personal effects of the patient; (7) right to vote in elections; (8) education of child patients; (9) maintenance of clinical records and preservation of confidential nature of same; (10) the right to petition for writ of habeas corpus; (11) the right to safe and dignified transportation; and (12) designation of representatives for patient. These rights are directed toward safeguarding for the patient a maintenance for him of the same measure of dignity, respect, attention, service and privileges as would accrue to any patient who was afflicted with other than a mental illness. This is part of the leglisative intent, as expressed in F.S. 394.453, `that individual dignity and human rights be guaranteed to all persons admitted to mental health facilities'.
10. Governmental immunity from suit for tort has been recognized as prevailing in this state except to the extent when court decisions have found same to be not applicable in certain proprietary functions of municipalities and local political subdivisions, and as authorized by general law. Section 13, Article X, Fla. Const. 1968, being the same as Section 22, Article III, Fla. Const. 1885, states:
`Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating.'
Waiver of governmental immunity must be strictly construed. Kennard v. State Tuberculosis Board, 129 Fla. 619, 176 So. 872. Waiver will not be reached as a product of inference or implication. Spangler v. Florida State Turnpike Authority [Fla.], 106 So.2d 421 (1958).
*535 In addition to Suwannee County Hospital Corp., appellant cites State v. Sarasota County, Fla., 74 So.2d 542, and other authorities holding that the operation of a county or municipal hospital is a proprietary rather than a governmental function and sovereign immunity, therefore, does not apply to such operation. The key distinction between the case sub judice and the county and city hospital cases is the distinction alluded to by the Supreme Court in its Suwannee River County Hospital Corp. opinion. As pointed out in the trial judge's order, it held that the operation of the hospital by the county was a proprietary rather than a governmental function "as to those patients who pay for the services they require and who are justified in expecting they will receive free of negligence the expert services for which they pay." As further pointed out by the trial judge, the Supreme Court went on to say:
"Institutions such as these are not a part of any statewide system maintained at public expense, so all who become afflicted, may, regardless of their individual worth, have the advantages of professional nursing, medical attention, and modern scientific apparatuses without cost to them."
The operation of a mental hospital or a system of mental hospitals by the state for the benefit of all of the citizens who need such hospitalization was established as a governmental function of the State on February 10, 1874, the effective date of Ch. 2012, Laws of Florida Acts of 1874. That act established the state mental hospital at Chattahoochee. Subsequently, that legislative act was reinforced by § 1 of Art. XIII of the Constitution of 1885, which provided:
"Institutions for the benefit of the insane, blind and deaf, and such other benevolent institutions as the public good may require, shall be fostered and supported by the State, subject to such regulations as may be prescribed by law."
Since that time the state has continued to maintain at public expense a statewide system of mental hospitals for the benefit of all of its citizens regardless of their individual worth. Ch. 394, Florida Statutes, 1973, (the Baker Act) carries forward that purpose. The fact that this latter Act authorizes the payment of some fees by patients who are financially able to do so does not change the function of operation of this statewide system of mental hospitals from governmental to proprietary. The act provides [§ 394.457(7)] that fees collected by the Division of Mental Health be based upon cost of care and ability of the patient to pay. It further provides that payment shall not be a prerequisite to treatment. The patient in the case sub judice was involuntarily committed to the hospital by court order because his mental condition required that he be confined for treatment. It is a necessary function of government that such state hospitals be provided for the welfare and security, not only of the patients, but of the public generally. While it is true that these hospitals also care for the mentally ill who are voluntarily admitted, such fact does not change the necessity that government provide such facilities.
Appellant contends that even if the state is held to be immune from tort liability in this case, the immunity does not extend to appellees C.H. Adair, M.D. (superintendent of the hospital) and J.P. Dobson, M.D. (a state employed physician at the hospital)  that they are individually liable. The law, however, is to the contrary. It appears from the complaint that their alleged negligent action or alleged negligent lack of action was in the course of their official authority and in line with their official duty with the state. Thus, the cloak of sovereign immunity extends to them. See 63 Am.Jur.2d, § 288, page 798.
Affirmed.
*536 MILLS, J., concurs.
BOYER, Acting C.J., concurs specially.
BOYER, Acting Chief Judge (concurring specially).
I concur in affirmance of the trial court's order of dismissal.