417 So.2d 658 (1982)
Robert E. RUPP, Ray R. Stasco, and the School Board of Duval County, Florida, a Body Corporate, Appellants,
v.
Glenn K. BRYANT and Leroy Bryant, Appellees.
No. 60826.
Supreme Court of Florida.
July 15, 1982.
*660 William G. Cooper and John F. MacLennan of Kent, Watts, Durden, Kent & Mickler, Jacksonville, for Robert E. Rupp and Ray R. Stasco.
Carle A. Felton, Jr. of Boyd, Jenerette, Leemis & Staas, Jacksonville, for School Bd. of Duval County, Florida.
Wm. M. Howell of Howell, Howell, Liles, Braddock & Milton, Jacksonville, for appellees.
SUNDBERG, Justice.
This cause comes before us to review the decision of the District Court of Appeal, First District, which declared unconstitutional the amended version of Florida's sovereign immunity statute and also found that a cause of action for negligent conduct had been stated against the school board, a high school principal and teacher, and a cause of action for willful negligence against the latter two, for their failure to supervise extracurricular student activity during which personal injury occurred. Bryant v. School Board, 399 So.2d 417 (Fla. 1st DCA 1981). Review is mandatory because of the declaration of statutory invalidity. Art. V, § 3(b)(1), Fla. Const. (1980). Although our reasoning is quite different, we agree with the conclusions of the district court, other than those concerning the willful negligence claim.

I.
Glenn Bryant, a student at Forrest High School in Jacksonville, and his father brought a negligence action against Ray R. Stasco, the school's principal, Robert E. Rupp, the faculty adviser for the Omega Club, and the School Board of Duval County. The Bryants complained that injuries severing Glenn's spinal cord, which resulted in permanent paralysis from the neck down, were caused by the defendants' negligence.
The complaint alleged that a school-sanctioned organization, the Omega Club, was reputed for conducting activities which violated school board regulations. Because of this reputation, the school board was required to closely monitor the club's activities. The club was required to obtain Principal Stasco's approval for extracurricular outings and was prohibited by school regulation from conducting hazing at initiation ceremonies. Appellee Rupp was assigned as faculty adviser to the club, and his presence was required at all club activities.
In October, 1975, the Omega Club decided during a meeting, unattended by Rupp, to conduct a hazing ceremony as part of an initiation. Rupp was also absent from the ensuing hazing ceremony during which Glenn Bryant received his injuries.
The first two counts of the Bryants' amended complaint, filed on February 9, 1979, allege negligence against the school board through its agents. The third count is against Rupp and Stasco individually. Count IV seems to be directed against Rupp and Stasco individually for gross and reckless negligence. The fifth count claims consequential damages of the father. The trial court dismissed the complaint with prejudice for failing to state a cause of action. The District Court of Appeal, First District, reversed the trial court, finding that the 1980 amendments to the sovereign immunity statute, section 768.28(9), Florida Statutes (1979), were unconstitutional as retroactively destroying vested rights of the Bryants to sue Rupp and Stasco. Bryant v. School Board. The amendments grant immunity from suit to state agents for ordinary negligence within the scope of duty, and apply to all pending cases as of the effective date (June 30, 1980). The court further held that the amended complaint stated a cause of action against the school board, Rupp and Stasco for ordinary negligence and against Rupp and Stasco for wanton and willful misconduct.

II.
The first issue we confront is whether Chapter 80-271, Laws of Florida,[1] which *661 relieves state officers, employees and agents from personal liability for their negligent acts and which is made applicable to all pending suits as of June 30, 1980,[2] is an unconstitutionally retroactive law because violating either article I, section 9[3] or article I, section 21[4] of the Florida Constitution and the dictates of Kluger v. White, 281 So.2d 1 (Fla. 1973).

A.
Our first step, and the heart of this issue, is to determine what legal rights the Bryants had prior to the 1980 amendments. At first glance, the issue would appear to be easily answered by our recent decision in District School Board v. Talmadge, 381 So.2d 698 (Fla. 1980), which specifically stated that victims of governmental negligence had always been able to sue the employee individually, and that the waiver of sovereign immunity by section 768.28(9), Florida Statutes (1975),[5] had not altered this right. But appellants urge that Talmadge was based on an incorrect premise, and claim that public officers and employees were not subject to personal liability for their torts prior to enactment of the sovereign immunity statute. Upon examination of the law, we must concede that appellants are in part correct, and the statement that public employees were liable under all circumstances for their tortuous acts is regrettably overbroad.[6]
The early Florida cases did impose an extremely broad tort liability on officers and employees for negligent conduct occurring in the course of their duties. The position of these cases was that such conduct was effectively outside the scope of the officer's or employee's authority, and was thus not protected by sovereign immunity. See Hampton v. State Board of Education, 90 Fla. 88, 102, 105 So. 323, 328 *662 (1925).[7] This position was consistent with the prevalent view among American jurisdictions at that time which imposed personal tort liability on public servants based on the English common-law rule which had traditionally held public servants accountable for their own torts. See 2 F. Harper & F. James, The Law of Torts § 29.8 (1956); Vaughn, The Personal Accountability of Public Employees, 25 Am.U.L.Rev. 85, 87 (1975).[8]
This broad liability began to be reduced during the 1930's which coincided with the massive expansion of governmental agencies and services, as well as with the beginning of governments waiving sovereign immunity.[9] The seminal Florida case of this era is First National Bank v. Filer, 107 Fla. 526, 145 So. 204 (1933), which defined the personal liability of public servants:
[W]here the law imposes upon a public officer the performance of ministerial duties in which a private individual has a special and direct interest, the officer will become liable to such individual for any injury which he may proximately sustain in consequence of the failure or neglect of the officer either to perform the duty at all, or to perform it properly. In such a case the officer is liable as well for nonfeasance as for misfeasance or malfeasance.
Id. 107 Fla. at 535, 145 So. at 207.
In 1966, the liability rule of Filer was again narrowed when this Court adopted Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), and granted an absolute privilege to lower executive officials as to defamatory publications. McNayr v. Kelly, 184 So.2d 428 (Fla. 1966).
The principles of Filer were developed and again focused in Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967). That case held that a building inspector's negligence in inspecting a building which collapsed causing a death was not actionable because his duty was owed only to the general public. Modlin developed the "special duty" requirement decreasing officer tort liability, and concomitantly decreasing governmental liability. A second limitation on liability inherent in Filer was also developed in a later case. City of Homestead v. International Association of Firefighters, 291 So.2d 38 (Fla. 3d DCA), cert. denied, 298 So.2d 414 (Fla. 1974), found that a city councilman could not be personally liable for conduct during labor negotiations since such bargaining was a discretionary act of the councilman, and was not merely ministerial.
Both of these limitations were severely questioned in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), a case which overruled Modlin to some extent in rejecting the "special duty" requirement as well as the governmental/proprietary distinction. Commercial Carrier, however, specifically did not deal with personal liability and immunity of officers and employees. Id. at 1012 n. 1.[10] That case dealt only with the extent to which governmental immunity had been waived. The Filer-Modlin legal standards for officers and employees thus survive Commercial Carrier, and are the standards *663 by which the Bryants' rights are to be measured.
The Filer-Modlin standard is also the view which is prevalent in other jurisdictions:
As a rule a public officer is answerable to private persons who sustain special damage resulting from the negligent performance of the officer's imperative or ministerial duties, unless the wrong done is a violation of a duty which he owes solely to the public.
63 Am.Jur.2d Public Officers and Employees § 293 (1972) (footnotes omitted). See, e.g., Spillman v. Beauchamp, 362 S.W.2d 33 (Ky. 1962) (officers and employees of a state department personally liable for negligence); Davis v. Little, 362 So.2d 642 (Miss. 1978) (official immunity does not protect public officer for negligent driving in scope of duties as non-discretionary act); Oyler v. State, 618 P.2d 1042 (Wyo. 1980) (public officer not entitled to per se immunity for negligence in offer of employment, but must be ascertained that actions were discretionary not ministerial; cases cited at 618 P.2d 1048 which follow this reasoning). Although federal courts have generally afforded broad immunity to officials and employees in the past, there is some tendency to qualify this official immunity and limit it to discretionary functions. Compare Barr v. Matteo; Norton v. McShane, 332 F.2d 855 (5th Cir.1964), cert. denied, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965), and Cooper v. O'Connor, 99 F.2d 143 (D.C. Cir.), cert. denied, 305 U.S. 642, 59 S.Ct. 146, 83 L.Ed. 414 (1938) (officials absolutely immune) with Doe v. McMillian, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); Jackson v. Kelly, 557 F.2d 735 (10th Cir.1977) (immunity of officials qualified and applies only to discretionary acts) and Kelley v. Dunne, 344 F.2d 129 (1st Cir.1965) (officials not immune for unauthorized, malicious acts).
The rationale for official immunity is the promotion of "fearless, vigorous, and effective administration of policies of government." Barr v. Matteo, 360 U.S. at 571, 79 S.Ct. at 1339. Hence, the qualification of immunity which limits it to discretionary acts is eminently practical. Acts which are discretionary are acts of governing; acts which are ministerial are not.[11] This standard for determining public servants' liability is thus predicated on the type of act the official or employee has undertaken when the injury occurs. The focus is not on the label of the public servant's position. We therefore eschew a distinction between public officials and public employees for the purposes of determining immunity. The cases in Florida have not made this distinction for purposes of determining immunity. Cases from other jurisdictions generally have not made this distinction.[12] Although we recognize that a distinction has often been made between public officers and employees in a state constitutional context, we do not perceive that the problem of determining when a public servant may claim immunity will be alleviated by infecting the area of sovereign immunity with additional technical nomenclature. See generally, Waldby, The Public Officer-Public Employee Distinction in Florida, 9 U.Fla.L.Rev. 47 (1956).

B.
Returning to the case before us, the parties assert either extreme. The Bryants claim absolute liability of the principal and teacher, who in turn claim absolute immunity. *664 As may be discerned from the above discussion, neither party is totally correct. Not only was Talmadge overbroad in its assessment of complete liability of public employees, but it also relied upon a case which did not explicitly involve the issue of official immunity. See Davis v. Watson, 318 So.2d 169 (Fla. 4th DCA 1975), cert. denied, 330 So.2d 16 (Fla. 1976). On the other hand, Rupp and Stasco rely on equally suspect cases. They cite Loucks v. Adair, 312 So.2d 531 (Fla. 1st DCA 1975), cert. denied, 327 So.2d 33 (Fla. 1976),[13] which does indeed hold that a state hospital superintendent and a state-employed physician are not individually liable for their negligence in the course of their official duties. Id. at 535. That case unfortunately cites 63 Am.Jur.2d Public Officers and Employees § 288, at 798 (1972), which states that a public officer is not personally liable to one injured in the line of his official duties. An examination of the authorities cited in support of this proposition reveals, however, that the statement is ill-supported by the cases.[14] Furthermore, the court in Loucks ignored a following section, 63 Am.Jur.2d Public Officers and Employees, § 293 (1972), which we quoted at p. 663, supra, and which states the contradiction, that public officers are generally liable for their torts arising from imperative or ministerial duties. The conclusion in Loucks is thus misguided.
Rupp and Stasco further rely on State Board of Administration v. Pasco County, 156 Fla. 37, 22 So.2d 387 (1945),[15] but that case involved no claim of negligence or fraud on the part of the county official. They turn finally to Smith v. Bolte, 172 So.2d 624 (Fla. 2d DCA 1965).[16] Once again a perspicacious reading of the case reveals that it is consistent with the Filer-Modlin standard and would not impose liability for mistakes in exercise of an administrator's discretion.

C.
We now face the arduous task of applying the Filer-Modlin standard to this case. For personal liability to be imposed on the principal and teacher they both must owe a "special duty" to the tort victim and the injury must have occurred in the course of ministerial duties.
The "special duty" requirement was developed in Modlin perhaps beyond its intended original scope as stated in Filer, and its expansive exclusion of liability was one reason why Commercial Carrier rejected the requirement. Filer did not speak in terms of "special duty," but rather in terms of "special damages" that the victim suffered. These "special damages" gave the injured party a special and direct interest in the official's performance of his ministerial duties. Although Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957), concerned only the sovereign immunity of a municipal corporation, a helpful analogy may be drawn between that case and the "special duty" requirement. By reading this requirement in light of Hargrove, one may discern that the "special duty" limitation in Modlin was somewhat overstated:

*665 [W]e here merely hold that when an individual suffers a direct, personal injury proximately caused by the negligence of a municipal employee while acting within the scope of his employment, the injured individual is entitled to redress for the wrong done. To support the rule we hearken back to our original Florida precedent, City of Tallahassee v. Fortune, supra [3 Fla. 19 (1850)]. Our judicial forebears there held that where an individual suffers a special personal damage not common to the community but proximately resulting from the negligence of the municipal corporation acting through its employees, such individual is entitled to redress.
Hargrove, 96 So.2d at 133-34 (footnotes omitted; emphasis added). It becomes apparent from the analysis in Hargrove that the special injury requirement was a traditional device of standing, designed to limit suits to victims whose damages were outside the community norm, thus giving that victim a special interest for which justice required a remedy.[17] We again reject the over-restrictive interpretation of this element in Modlin.
For the Bryants to satisfy the first Filer standard they need only show a special and direct interest in the public employee's performance of his duty. The serious personal injury to Glenn Bryant unquestionably affords the Bryants "special damages."
The second condition that must be satisfied is that the duty of the public employee which caused the injury must have been ministerial. The question is therefore whether a principal's or teacher's duty to supervise a student is ministerial or discretionary. Cases from other jurisdictions that have confronted this same issue have found that the duty to supervise is a ministerial, non-discretionary duty. In Larson v. Independent School District, 289 N.W.2d 112 (Minn. 1979), the Minnesota Supreme Court found that neither a teacher nor principal exercised discretion for purposes of immunity when conducting and supervising a physical education class during which a student performing a required headspring was injured. The teacher's determination of how to teach a gymnastic exercise was non-discretionary even though he exercised a degree of judgment. Likewise, the principal's failure to supervise a novice physical education teacher in the development of the course curriculum was an abdication of his duties, not a discretionary alternative. Id. at 121. Neither the teacher nor the principal were involved in policy-making with reference to acts causing the injury. See also Cook v. Bennett, 94 Mich. App. 93, 288 N.W.2d 609 (1979) (failure of principal to supervise teacher is negligent performance of ministerial duty); Salyers v. Burkhart, 47 Ohio App.2d 90, 352 N.E.2d 156 (1974) (teacher liable for torts as duties ministerial and not protected by immunity), aff'd, 44 Ohio St.2d 186, 339 N.E.2d 652 (1975).[18] We agree with these cases, and find that the duty to supervise high school students is generally ministerial in nature. Particularly under the circumstances of this case in which the specific duty to supervise the club was required by the school board's own regulations, we have no difficulty in denominating such a duty as ministerial. Because the duty does not involve discretion in the policy-making sense, neither the principal nor the teacher may raise the shield of official immunity.
The Bryants prior to the 1980 amendments thus had the right to seek recovery from both Rupp and Stasco since *666 neither defendant could assert immunity. The amendments plainly abolished this right retroactively. Based on due process considerations expressed in Village of El Portal v. City of Miami Shores, 362 So.2d 275 (Fla. 1978), and McCord v. Smith, 43 So.2d 704 (Fla. 1949), which prohibit retroactive abolition of vested rights, we agree with the district court that section 768.28(9), Florida Statutes (Supp. 1980), is unconstitutional insofar as it abolishes the Bryants' right to recover from Rupp and Stasco. Under similar circumstances, we recently held that those same 1980 amendments could not constitutionally affect a non-final jury award, and any reduction of the award was an impermissible, retroactive law. State, Department of Transportation v. Knowles, 402 So.2d 1155 (Fla. 1981). Although the Bryants have not proceeded as far in the litigation process, we apply the reasoning in Knowles to reach the same conclusion that the 1980 amendments may not be applied retroactively in this case.[19]

III.
The second issue we tackle is perhaps even more abstruse than the first. We must determine whether the Bryants have stated a cause of action in their complaint. They have alleged the ordinary negligence of the school board and its employees, Rupp and Stasco, in failing to properly supervise the Omega Club, with its known propensity for violating school board policy. The Bryants additionally allege "gross and reckless" negligence apparently against Rupp and Stasco. Underlying all claims are the premises that the defendants owed a duty to supervise under these circumstances, and that the breach of that duty was the proximate cause of Bryant's injury. The school board and its employees deny both of these premises.

A.
A public school, at least through the high school level, undoubtedly owes a general duty of supervision to the students placed within its care. Case law is replete with instances of schools, principals and teachers being required to reasonably fulfill their duty to supervise students. See, e.g., Dailey v. Los Angeles Unified School District, 2 Cal.3d 741, 470 P.2d 360, 87 Cal. Rptr. 376 (1970) (school authorities have duty to supervise conduct of children); Eastman v. Williams, 124 Vt. 445, 207 A.2d 146 (1965) (duty to supervise pupils in place of parent). See generally Seitz, Tort Liability of Teachers and Administrators for Negligent Conduct Toward Pupils, 20 Clev.St.L.Rev. 551 (1971); Annot., 38 A.L.R.3d 830 (1971).[20] Florida courts have specifically recognized that a negligent failure to act in carrying out this duty of the school is actionable. See Ankers v. District School Board, 406 So.2d 72 (Fla. 2d DCA 1981); Padgett v. School Board, 395 So.2d 584 (Fla. 1st DCA 1981). The genesis of this supervisory duty is based on the school employee standing partially in place of the student's parents.[21] Mandatory schooling has forced parents into relying on teachers to protect children during school activity. But our problem is complicated by the fact that the injury did not occur during the school day or on school premises. As such, we must define the scope of the school's and employee's duty to supervise.
There are two approaches to delineating a duty which we will examine. The first is expressed in terms of Hohfeldian correlatives,[22] and finds that a correlative duty exists only to the extent that the school and its employees have the authority *667 to control the behavior of a student. See McLeod v. Grant County School District, 42 Wash.2d 316, 319-20, 255 P.2d 360, 362 (1953) (correlative of right to enforce rules against pupils is duty to protect). Under this analysis, it is fairly evident that both the principal and teacher had the authority to control the activities of the Omega Club as a school-sponsored club. School board regulations[23] and state statutes[24] specifically provide such authority. That the meeting was held off school premises does not affect the authority and correlative duty to control that meeting. See Morris v. Douglas County School District, 241 Or. 23, 403 P.2d 775 (1965) (duty to supervise extends to off-premises, school related activity).
The second approach is more pragmatically and socially oriented, and assesses the interests of each party and society to determine whether a duty should be imposed: "`[D]uty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." W. Prosser, The Law of Torts § 53 at 325-26 (4th ed. 1971). The student has an interest in freedom from suffering negligent injury; the school has an interest in avoiding responsibility for a duty which it cannot realistically carry out. The societal interest in the activity surrounding the injury is another significant factor. The school authorized and sponsored the Omega Club, which presumably pursues some worthwhile social activities. The school authorities assumed control over the club as well as its meetings, as evidenced by assignment of Rupp as the faculty adviser. Because the club was operated under the auspices of the school, it had assumed control and supervision of all club activities, an assumption upon which the parents of participants had a right to rely. In a strikingly similar case, Chappel v. Franklin Pierce School District, 71 Wash.2d *668 17, 426 P.2d 471 (1967),[25] the court considered identical factors to find a high school owed a supervisory duty to a student injured at a club hazing occurring off school premises and in absence of the faculty adviser. We recognize, as the Washington court, that service clubs can have an important socializing benefit to students. Additionally, given the school's manifestations of control of the club by sponsorship and regulation, we also find the responsibility of supervising club activities is reasonably imposed upon school authorities. Under these conditions social utility is enhanced by imposition of a duty and the school is not unduly burdened.[26]

B.
Having determined a duty did exist under the circumstances of this case, the next predicate required for establishing a negligence action is that a breach of this duty by defendants was the proximate cause of the injury to plaintiffs.[27] As we have once stated, the key to proximate cause is foreseeability, which means here determining whether the injuries to Bryant were a foreseeable consequence of the school's failure to supervise. See Vining v. Avis Rent-A-Car Systems, Inc., 354 So.2d 54 (Fla. 1977).
Whether a principal's or teacher's failure to supervise a student was the proximate cause of injuries suffered by a student is the issue most consistently litigated in negligent school supervision cases. The issue is usually complicated by the simultaneous tortious conduct of fellow students, so that the question becomes one of whether the fellow students' negligence was the intervening cause of the harm. Two distinct standards have developed. The first holds that a teacher's absence leading to an injury to one student by another can be the proximate cause of the injury only if the injury could not happen while the teacher was present. These cases generally find student misbehavior is the proximate and superceding cause of the harm. See Ohman v. Board of Education, 300 N.Y. 306, 90 N.E.2d 474 (1949).[28] The second, and more reasonably supported, holds that certain student misbehavior is itself foreseeable and therefore is not an intervening cause which will relieve principals or teachers from liability for failure to supervise:
"[W]e should not close our eyes to the fact that . .. boys of seventeen and eighteen years of age, particularly in groups where the herd instinct and competitive spirit tend naturally to relax vigilance, *669 are not accustomed to exercise the same amount of care for their own safety as persons of more mature years." Recognizing that a principal task of supervisors is to anticipate and curb rash student behavior, our courts have often held that a failure to prevent injuries caused by the intentional or reckless conduct of the victim or a fellow student may constitute negligence.
Dailey v. Los Angeles Unified School District, 2 Cal.3d 741, 748-49, 470 P.2d 360, 364, 87 Cal. Rptr. 376, 380 (1970). Courts following this standard find that a lack of deportment in unsupervised students is to be expected. Thus rough-housing or hazing at a high school club initiation is behavior which is not so extraordinary as to break the chain of causation between the school's failure to supervise and the injury to the student. See, e.g., Sheenan v. St. Peter's Catholic School, 291 Minn. 1, 188 N.W.2d 868 (1971); Titus v. Lindberg, 49 N.J. 66, 228 A.2d 65 (1967); Cirillo v. City of Milwaukee, 34 Wis.2d 705, 150 N.W.2d 460 (1967); Chappel.
We perceive that the Dailey standard more nearly comports with Florida negligence law which recognizes that the intervening negligence of a third party does not relieve the original tortfeasor of his negligence if the intervening negligence is foreseeable. See Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520 (Fla. 1980); Vining. A standard which recognizes that certain student misconduct will foreseeably occur when students are left unsupervised fulfills the definition in Gibson which finds an intervening cause foreseeable when "`in the field of human experience' the same type of result may be expected again." Id. at 522-23.[29]
Under the facts of this case, there can be little doubt that accidents of this type are foreseeably the result of absence of supervision. This conclusion is reinforced by the school board's own prohibition of hazing and requirements of the principal's approval of outings and the teacher's attendance at all meetings. Not only was this harm foreseeable, but the school had actually anticipated it through regulations which it failed to follow. The errant reputation of the Omega Club bespoke its unreliability and need for supervision, enhancing foreseeability.
The school makes a second assault on proximate cause from a different tack. They assert that since the teacher did not attend the meeting at which the determination was made to carry out hazing, his failure to attend the actual hazing did not proximately cause Bryant's injury. The school in essence claims its first dereliction of duty protects it from the second, which was the proximate cause of the injury. To this novel argument, we make two replies. First, the Bryants have specifically alleged that the teacher knew hazing was going to be carried out at the subsequent meeting. Second, we find it difficult to fathom how the school breaks the chain of causality between the failure to attend the initial meeting and the actual hazing. Had the teacher attended, he would obviously have known of the plan. His self-induced ignorance can hardly support the lack of proximate cause between the school's failure to supervise and the consequent injuries. At best, reasonable men could clearly disagree as to whether the school's neglect proximately caused the injuries. As such, the issue is for the fact-finder. See Vining.

C.
The final point of contention is whether the Bryants have successfully pleaded an action for wanton and willful negligence against Rupp and Stasco.[30] The *670 Bryants claim that these defendants acted recklessly because they had the means and the knowledge to have easily prevented Bryant's injuries, and that only because of their willful neglect of their duties did those injuries occur. Certainly the Bryants cannot successfully state a cause of action for exemplary damages by merely using the descriptive phrase "gross and in reckless disregard," to label acts of the defendants. See Rice v. Clement, 184 So.2d 678 (Fla. 4th DCA 1966). For exemplary damages to be recovered, the complaint must allege facts and circumstances of fraud, malice, gross negligence, or oppression. Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (1936). In this context, gross negligence must be established by facts evincing a reckless disregard of human life or rights which is equivalent to an intentional act or a conscious indifference to the consequences of an act. Florida Southern Ry. v. Hirst, 30 Fla. 1, 39, 11 So. 506, 513 (1892). The facts here alleged simply cannot support imputation to defendants of intent or conscious indifference, and therefore fail to state a cause of action for exemplary damages. Cf. Nicholas v. Miami Burglar Alarm Co., 339 So.2d 175 (Fla. 1976) (punitive damages not warranted for negligent supervision of burglar alarm system as allegations fail to establish acts from which malice or intent could be imputed).

IV.
In conclusion, we find that appellants Rupp and Stasco are not entitled to assert immunity as public officials or employees under these circumstances, that the legislature's attempt to shield these employees from personal tort liability by retroactive application of section 768.28(9), Florida Statutes (Supp. 1980), is unconstitutional as violative of due process, that the Bryants have successfully stated a cause of action in negligence against all the appellants, but have failed to state a cause of action against the employees for wanton and willful negligence. The decision of the District Court of Appeal, First District, is therefore affirmed in part and reversed in part, but for the reasons we have stated.
It is so ordered.
ADKINS and McDONALD, JJ., concur.
OVERTON, J., concurs specially with an opinion, in which McDONALD, J., concurs.
ALDERMAN, C.J., concurs in result only.
BOYD, J., dissents with an opinion.
OVERTON, Justice, concurring specially.
I concur in the majority opinion. The legal authority to bring suit against a governmental entity and its officials or employees individually is presently a confused area of the law. This opinion provides guidance in both pending cases and future cases brought under the authority of section 768.28, Florida Statutes (1981).
With this decision, it should be clear that, for actions commenced between January 1, 1975, the effective date of the original section 768.28, chapter 73-313, Laws of Florida, and June 30, 1980, the effective date of the amendment of section 768.28(9), chapter 80-271, Laws of Florida, suit may be maintained against both the state and the employee or official for the ordinary negligence of the employee or official in carrying out ministerial, though not discretionary, duties in the course of employment for the government, provided there is a special duty to the complainant as reflected in First National Bank v. Filer, 107 Fla. 526, 145 So. 204 (1933), and in Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967). For *671 all actions commenced after June 30, 1980, section 768.28(9), as amended, provides that the employee or official is personally immune from suit for ordinary negligence in the performance of governmental employment and that the action may be maintained only against the governmental entity. A suit claiming that an employee or official acted in a wanton, willful, or malicious manner can only be brought against the individual employee or official, and the governmental entity is not a proper party to such a cause of action.
McDONALD, J., concurs.
BOYD, Justice, dissenting.
I dissent from the holding that the individual appellants may be held liable for negligence and responsible for the appellees' damages. As I interpret chapter 80-271, § 1, Laws of Florida, it was intended to clarify the waiver of sovereign immunity statute, and therefore the legislature was within its rights to declare it applicable to pending suits as well as future ones. The legislative intent was the same under the old and the new statutes.
In District School Board v. Talmadge, 381 So.2d 698 (Fla. 1980), I wrote in dissent that section 768.28(9), Florida Statutes (1975), immunized government employees from being held liable for damages caused by their ordinary negligence. I believe that the 1980 amendments were enacted by the legislature in direct response to this Court's erroneous holding that employees were not so immunized. Therefore the 1980 enactment did not destroy vested rights but merely declared what was already the law.
The basic purpose of section 768.28(9), both before and after the 1980 amendment was to immunize public employees from liability for ordinary negligence, while providing injured claimants a remedy against governmental entities through the waiver of sovereign immunity. This reform was designed to promote vigorous performance of duties by government employees, free from the fear of negligence actions, while at the same time providing redress through governmental assumption of liability to persons injured by the ordinary negligence of government employees.
NOTES
[1] Ch. 80-271, § 1, Laws of Fla., reads in part:

768.28 Waiver of sovereign immunity in tort actions; recovery limits; limitation on attorney fees; statute of limitations; exclusions. 
(9) No officer, employee, or agent of the state or its subdivisions shall be held personally liable in tort or named as a party defendant in any action for a final judgment which has been rendered against him for any injuries or damages suffered as a result of any act, event, or omission of action in the scope of his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The exclusive remedy for injury or damages suffered as a result of any act, event or omission of any officer, employee, or agent of the state, or its subdivisions or constitutional officers, shall be by action against the governmental entity, or the head of such entity in his official capacity, or constitutional officer of which the officer, employee or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
[2] See Ch. 80-271, §§ 4, 6, Laws of Fla.
[3] 9. Due process.  No person shall be deprived of life, liberty or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against himself.
[4] 21. Access to courts.  The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.
[5] This section became effective as to schools on January 1, 1975, and was thus in effect at the time of Bryant's injury.
[6] Likewise, the statement that "virtually every American jurisdiction permits tort suits against both the government and its employees" is also overbroad. Talmadge, 381 So.2d at 702 (footnote omitted). The footnote to this statement references Bermann, Integrating Governmental and Officer Tort Liability, 77 Colum.L.Rev. 1175, 1213 (1977). The article more accurately states that such actions are allowed under "some circumstances." Id. These circumstances which allow recovery against the officer or employee often include malicious, wanton, willful or fraudulent conduct, conduct not at issue in Talmadge. See, e.g., Bermann, supra, at 1191 n. 96. Even the 1980 amendments to the Florida sovereign immunity statute do not protect an employee for wanton and willful misconduct. See § 768.28(9), Fla. Stat. (Supp. 1980).
[7] See also Apalachicola Land & Dev. Co. v. McRae, 86 Fla. 393, 98 So. 505 (1923); Louisville & N.R. v. Railroad Com'rs., 63 Fla. 491, 58 So. 543 (1912).
[8] In a leading case on the subject, Miller v. Horton, 152 Mass. 540, 26 N.E. 100 (1891), the court even imposed a form of strict liability on members of a board of health who had destroyed a horse mistakenly thought to have glanders.
[9] See Civil Liability of Government Officials, 42 Law & Contemp.Probs. 81, 84-87 (1978).
[10] Talmadge also purports not to deal with officer immunity. Id. at 700 n. 2. The facts of Talmadge, however, belie this claim. The central question in that case was whether a public employee could be sued after enactment of the sovereign immunity statute. Essential to a finding of liability was the overbroad statement which asserted public employees were never immune from suit. Unless we draw a distinction between officer and employee immunity, Talmadge ineluctably concerned the issue of public servants' individual immunity. We refuse to draw a bright line between officers and employees for the purposes of determining immunity from liability for their personal torts. See infra p. 664.
[11] Of course, this line is never easy to draw. Commercial Carrier, although discarding the distinction of discretionary/ministerial in the context of governmental immunity nevertheless recognized that certain "discretionary" acts were still covered by sovereign immunity, equating these acts to "planning" as opposed to "operational" actions. Id. at 1020-22.
[12] Only three cases have specifically relied upon the officer/employee distinction when immunity was asserted. Duncan v. Koustenis, 260 Md. 98, 271 A.2d 547 (1970); Baird v. Hosmer, 46 Ohio St.2d 273, 347 N.E.2d 533 (1976); Eastman v. Williams, 124 Vt. 445, 207 A.2d 146 (1965). Whether Eastman held a teacher could not assert immunity because he was an employee or because his position was ministerial in nature was unclear. Duncan and Baird relied on Eastman.
[13] Also cited is Martin v. Broward Gen. Medical Center, 332 So.2d 84 (Fla. 4th DCA 1976), which merely relies on Loucks.
[14] George Moore Ice Cream Co. v. Rose, 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265 (1933), did not involve an act of personal negligence. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), is inapposite. Anneker v. Quinn-Robbins Co., 80 Idaho 1, 323 P.2d 1073 (1958), concerned agency liability, not individual officer liability. Spillman v. Beauchamp, 362 S.W.2d 33 (Ky. 1962), stands for the opposite position, and would impose liability for negligence. Heiser v. Severy, 117 Mont. 105, 158 P.2d 501 (1945), recognized on petition for rehearing that a game warden could be individually liable for his torts. Price v. State Highway Comm'n, 62 Wyo. 385, 167 P.2d 309 (1946), was essentially overruled by Oyler v. State, 618 P.2d 1042 (Wyo. 1980).
[15] State Board of Administration v. Pasco County concerned, in part, a suit against a county commissioner for the issuance of excess interest coupons, but apparently no personal neglect or wrong-doing was alleged.
[16] Smith v. Bolte involved, in part, a suit against members of the park board for damages to abutting property owners when the park allowed construction and operation of a miniature railroad. This decision was determined to be within the board's discretion.
[17] The quote from Hargrove also suggests that "special personal damage" is an element of proximate cause. General damages to each member of a community could, however, be proximately caused by the negligence of an official.
[18] Cf. Hennessy v. Webb, 245 Ga. 329, 264 S.E.2d 878 (1980) (principal's decision to place rug at door discretionary); Pratt v. Robinson, 39 N.Y.2d 554, 349 N.E.2d 849, 384 N.Y.S.2d 749 (1976) (extent to which school district decides to provide busing discretionary). Some courts find a teacher is simply not immune from suit for his negligent acts. See, e.g., Spearman v. University City Pub. School Dist., 617 S.W.2d 68 (Mo. 1981); Short v. Griffitts, 220 Va. 53, 255 S.E.2d 479 (1979).
[19] Because we rely on Village of El Portal, McCord and Knowles, we do not reach arguments predicated on Kluger v. White, 281 So.2d 1 (Fla. 1973), nor do we address prospective application of the amendments.
[20] See also Benton v. School Bd., 386 So.2d 831 (Fla. 4th DCA 1980) (recognizing general duty of school to supervise students); Barrera v. Dade County School Bd., 366 So.2d 531 (Fla. 3d DCA 1979).
[21] See King v. Dade County Bd. of Pub. Instruction, 286 So.2d 256 (Fla. 3d DCA 1973), cert. denied, 294 So.2d 89 (Fla. 1974).
[22] Proehl, Tort Liability of Teachers, 12 Vand. L.Rev. 723, 740 n. 96 (1959).
[23] The Bryants quoted the following school board policies and regulations in their complaint:

STUDENT ORGANIZATIONS
The schools may encourage students to broaden their knowledge and citizenship by permitting the formation of clubs or other groups organized to promote or pursue specialized activities outside the classroom, provided membership is open to all interested and/or eligible students, and approval of the building principal is obtained, and a member of the faculty attends the meeting or activity as an official advisor. [Emphasis added.]
STUDENT INITIATIONS
All forms of hazing (crewed haircuts, physical violence, etc.) in initiations shall be prohibited in clubs and organizations connected with the public schools of Duval County ... All initiations shall be formal functions open to the public, and no initiation shall be held which will bring criticism to the school system or be degrading to the student.
STUDENT SOCIAL EVENTS
... The principal's approval is necessary for all outings held outside of school hours when sponsored by a school organization or in the name of the school...
Also pertinent is Restatement of Torts (Second) § 320 (1965) which reads:
Duty of Person Having Custody of Another to Control Conduct of Third Persons One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor
(a) knows or has reason to know that he has the ability to control the conduct of the third persons, and
(b) knows or should know of the necessity and opportunity for exercising such control.
[24] Sections 231.085 & 232.26-.27, Florida Statutes (1979), outline the authority and duties of principals and teachers, including authority to control students wherever assigned. Section 232.27 provides in part:

Subject to law and to the rules of the district school board, each teacher or other member of the staff of any school shall have such authority for the control and discipline of students as may be assigned to him by the principal or his designated representative and shall keep good order in the classroom and in other places in which he is assigned to be in charge of students. [Emphasis added.]
Section 232.39, Florida Statutes (1979), prohibits secret societies in public schools, and by its terms effectively requires that the Omega Club be school sanctioned and supervised.
[25] In Chappel, the school also had anti-hazing regulations, which the faculty adviser had indifferently enforced in the past. The adviser attended the original club meeting where the hazing was planned, but failed to attend the actual hazing. The adviser's attendance at the first meeting is the only significant difference from the present case, and affects only causation, discussed infra.
[26] A teacher has no duty, however, to supervise all movements of all pupils all the time. See Benton v. School Bd., 386 So.2d 831 (Fla. 4th DCA 1980) (no teacher liability when child has finger crushed in bathroom door by another child). Under the circumstances in Benton, no duty could be imposed on a teacher to accompany one child to the bathroom since such a requirement would conflict with the greater duty to supervise generally. Since there was no duty, the district court's apparent adoption of the Ohman rationale (see discussion infra, p. 668) of limiting proximate cause is merely dicta, but one which we do not approve. In Benton the plaintiff had also failed to show any breach of duty, which would be difficult in any event since no duty existed. Cf. Bradshaw v. Rawlings, 612 F.2d 135 (3d Cir.1979) (college has no duty of custodial care of students who, due to maturity, are capable of protecting self-interests, and because such a duty would impose an unrealistic burden on college), cert. denied, 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 26 (1980). The school also has no duty to supervise off-premises activities of students which are not school related. See Oglesby v. Seminole County Bd. of Pub. Instruction, 328 So.2d 515 (Fla. 4th DCA 1976).
[27] Breach of duty and damages are two additional elements required for a negligence cause of action. See W. Prosser, The Law of Torts § 30 (4th ed. 1971). Since a duty has been found, there can be no doubt that the total failure to supervise can be a breach of that duty. Also self-evident are the damages to the Bryants.
[28] See also Segerman v. Jones, 256 Md. 109, 259 A.2d 794 (1969); Guyten v. Rhodes, 65 Ohio App. 163, 29 N.E.2d 444 (1940).
[29] Quoting from Pinkerton-Hays Lumber Co. v. Pope, 127 So.2d 441, 443 (Fla. 1961).
[30] The district court noted in its opinion concerning this matter that the state and its subdivisions have maintained sovereign immunity for acts of officers or employees characterized as "wanton and willful":

The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
§ 768.28(9)(a), Fla. Stat. (Supp. 1980). Unfortunately, we confront the same problem of retroactivity of this provision since the statute prior to amendment did not contain this language. Fortunately, Talmadge deciphered this inscrutable statute to mean that sovereign immunity still protected the state when the officer or employee committed a wanton and willful tort. 381 So.2d at 702-03. This much of Talmadge was obviously approved by the legislature as it incorporated this part into the 1980 amendments. The Bryants have no claim against the state for the wanton and willful negligence of its officers and employees under Talmadge.