450 So.2d 883 (1984)
William J. LEAHY, Jr., Etc., and Ina M. Foster, Etc., Appellants,
v.
The SCHOOL BOARD OF HERNANDO COUNTY, Florida, Appellee.
No. 83-730.
District Court of Appeal of Florida, Fifth District.
May 10, 1984.
*884 Dock Blanchard of Tucker, Brannen, Blanchard & Stillwell, P.A., Ocala, for appellants William J. Leahy, Jr., et al.
Joseph E. Johnston, Jr., of Joseph E. Johnston, Jr., P.A., Brooksville, for appellee.
ORFINGER, Chief Judge.
This appeal is from a directed verdict for defendant on the issue of tort liability in a case arising out of an injury resulting from a football drill. The plaintiffs, William J. Leahy and his guardian, appeal from the final judgment entered on the directed verdict, contending that the trial court erred in removing the case from the jury and that when the evidence and all reasonable inferences therefrom are viewed in a light most favorable to the plaintiff, there was substantial evidence upon which the jury could have found for the plaintiff. We agree and reverse for a new trial.
The testimony below showed that the appellant was a freshman attending spring practice for the Hernando High School football team. On May 1, 1979, the first day of practice, equipment was issued, but the appellant and several other freshmen did not receive helmets because the school did not have a sufficient number of the correct sizes available. When the available equipment was issued, no special instructions were given by any of the football coaches to those players who were not issued helmets and attached mouth guards regarding limitations on their participation in practice. (Helmets are also equipped with face guards that partially cover the face.) On the second day of practice, the players went out on the field for practice in whatever equipment they had been issued. There were approximately sixty students being supervised by Coach Palmer and three assistants who were in the vicinity of the stadium.
Several of the players were instructed to participate in an "agility" drill, and although the drill did not involve blocking or tackling, it did involve coming into contact with other players. No special precautionary instructions were given to the players who had no helmets or mouth guards relative to those players who had such equipment. Ten or twelve of the more experienced players (all with helmets) were instructed to get on their hands and knees and position themselves in a row. The rest *885 of the players formed a line and approached the row one at a time. They were instructed to go up to each lineman, hit him on the shoulders with both hands, fall and roll on the ground, and then get up "as fast as possible" and go on to each subsequent lineman in the same manner. Although this was referred to by the coaches as a "no contact drill", by the very nature of it, some physical contact between the players was required. After the drill started, the coaches let it continue on its own and they watched from the sidelines.
Although other participants preceded him, the appellant was the first player without a helmet who attempted the drill. There was testimony that at this point the players had become more aggressive (they were "hitting harder," "getting rowdy," "knocking the people that were down back" and "digging in and getting a better hold"). The appellant came up to the first lineman on the row and when he started down to hit the lineman's shoulder pads as instructed, the lineman straightened his arms or raised his head and the appellant's face collided with the lineman's helmet. There was also testimony that the appellant's hands slipped off the lineman's shoulder pads before the impact. The appellant suffered facial injuries and his front teeth were shattered. Appellant presented expert testimony to the effect that no player should be permitted to participate in a drill like this without a helmet.
The appellee's motion for directed verdict alleged that the appellant had failed to establish by positive evidence any negligence on the part of the school board that would be actionable. The appellant submits, however, that the evidence supports at least four different theories of negligent behavior on the part of the school board:
(1) The failure to issue a helmet and/or have one available for plaintiff;
(2) The failure to issue any precautionary instruction relative to those players participating in the drill without helmets and mouth guards;
(3) Affirmatively allowing players without helmets and mouth guards to participate in a contact drill with players who did have such helmets;
(4) Not limiting the intensity of the players' activities during the drill at least as to those who had no helmets, once it became apparent that the drill was becoming aggressive.
Florida case law recognizes the general duty of schools, principals and teachers to adequately supervise students placed within their care. Rupp v. Bryant, 417 So.2d 658 (Fla. 1982). "The genesis of this supervisory duty is based on the school employee standing partially in place of the student's parents." Id. at 666. See also, Benton v. School Board, 386 So.2d 831 (Fla. 4th DCA 1980); Barrera v. Dade County School Board, 366 So.2d 531 (Fla. 3d DCA 1979); King v. Dade County School Board of Public Instruction, 286 So.2d 256 (Fla. 3d DCA 1973), cert. denied, 294 So.2d 89 (Fla. 1974).
The school board in the instant case owed a duty to properly supervise the activity, which was an approved school activity and one in which the school's employees had the authority to control the behavior of the students.[1] Regarding school athletic activities, it has generally been held that:
The duty owed an athlete takes the form of giving adequate instruction in the activity, supplying proper equipment, making a reasonable selection or matching of participants, providing nonnegligent supervision of the particular contest, and taking proper post-injury procedures to protect against aggravation of the injury.
Annot., 35 A.L.R.3d 725, 734 (1971) (footnotes omitted) (emphasis added).
*886 A directed verdict is proper only when no evidence has been presented which would support a verdict for plaintiff. National Car Rental Systems, Inc. v. Bruce A. Ryals Enterprises, Inc., 380 So.2d 529 (Fla. 5th DCA 1980); Budgen v. Brady, 103 So.2d 672 (Fla. 1st DCA 1958). In determining whether the appellant established a case sufficient to withstand a directed verdict we must address the question of whether there was evidence of a breach of the duty owed by the appellee which breach a jury could conclude was the proximate cause of the appellant's injury.
There was testimony at trial that although the football drill wherein the appellant was injured was characterized by the coach as a noncontact drill, he instructed the boys to line up one at a time and hit the other player on the shoulders, roll down on the ground, and then hit the next player. There was also testimony that the drill became progressively more aggressive or "rowdy" and the players were hitting each other harder. There was no testimony that any of the coaches attempted to lessen the intensity of the drill. Furthermore, the coach did not issue any warnings or statements regarding contact during drills, even though several of the players (those less experienced), including the appellant, had not been issued helmets and mouth guards due to the school's lack of a sufficient number of sizes. Because football helmets with their attached faceguards and mouthpieces are used as safety or protective devices, calculated to protect the player against head or facial injuries, the evidence that appellant was permitted to participate without a helmet was a sufficient basis upon which a jury could conclude that the school (through its employees) failed to exercise reasonable care under the circumstances for the protection of the appellant.
There was also testimony indicating that the injury to the appellant was a foreseeable consequence of the failure to provide the appellant with a helmet and mouth guard, of the failure to give cautionary instructions regarding contact (especially regarding the fact that some players had helmets while others did not) and of the failure to limit the progressive intensity of the drill under such circumstances. Coach Palmer testified that under ideal circumstances, all players wear the same equipment (presumably when the school provides enough equipment of sufficient sizes). He also acknowledged that the players are encouraged to do the drills at a fast pace (which increases the risk of contact) and that he was aware that the players become aggressive during these drills. Additionally, a coach from a nearby high school testified that it is recognized in the field of football that a helmet can be a dangerous weapon to another player. It was his testimony that when conducting a drill similar to that which occurred in the instant case, where there is a possibility of bodily contact, a helmet would be a necessary safety feature.
Foreseeable consequences are those which a person by prudent human foresight can be expected to anticipate as likely to result from an act, because they happen so frequently from the commission of such act that in the field of human experience they may be expected to happen again. Although the actual harm that results may be seen as not foreseeable, it is not necessary that the tortfeasor be able to foresee the exact nature and extent of the injuries in the precise manner in which they occur; rather, all that is necessary is that the tortfeasor be able to foresee some injury as likely to result in some manner as a consequence of his negligence. Goode v. Walt Disney World Company, 425 So.2d 1151 (Fla. 5th DCA 1982). There is a reasonable inference available to find causation between the negligence of the appellee and the appellant's injury in this case, therefore the question of foreseeability seems to be one properly for the jury.
Also relevant to the issue of foreseeability is the fact that "[i]f an intervening cause is foreseeable, it cannot insulate a defendant from all liability." Goode. Put another way, the intervening negligence of a third party does not relieve the *887 original tortfeasor of his negligence if the intervening negligence is foreseeable. Rupp. Thus, even if appellant here was moving faster than some of the other players, and even if the player with whose helmet the appellant made contact improperly and negligently straightened his arms and raised his head, the testimony at trial indicated that such actions were foreseeable to the coach. Both the coaches and the players testified that varying speeds are used during these drills and that many of the players do not always do them properly, and they are not expected to (especially those with less experience).
In Rupp, a student was injured during an unsupervised club hazing. The Florida Supreme Court recognized that "certain student misbehavior is itself foreseeable and therefore is not an intervening cause which will relieve principals or teachers from liability for failure to supervise." The court continued:
"[W]e should not close our eyes to the fact that . .. boys of seventeen and eighteen years of age, particularly in groups where the herd instinct and competitive spirit tend naturally to relax vigilance, are not accustomed to exercise the same amount of care for their own safety as persons of more mature years." Recognizing that a principal task of supervisors is to anticipate and curb rash student behavior, our courts have often held that a failure to prevent injuries caused by the intentional or reckless conduct of the victim or a fellow student may constitute negligence.
Id. at 668-669. The issue of foreseeability in the instant case was one for the jury and the actions of the appellant and the other players were no less foreseeable than the roughhousing or hazing which occurred in Rupp.
The appellee argues that the appellant assumed the risk inherent in the ordinary play of football, however, there is no evidence that he assumed the risk of participating in a training drill which was improperly supervised and for which he had improper and insufficient equipment. See O'Connell v. Walt Disney World, 413 So.2d 444, 448 (Fla. 5th DCA 1982). The plaintiff must have voluntarily exposed himself to a known risk in order for the defense of express assumption of risk to apply. Kuehner v. Green, 436 So.2d 78 (Fla. 1983). Moreover, it is up to the jury to decide whether the plaintiff subjectively appreciated the risk giving rise to any injury sustained while participating in a contact sport. Id. As stated by the Florida Supreme Court in Kuehner:
If the plaintiff is found not to have subjectively appreciated the risk, the trier of fact must determine, after reviewing all evidence, whether this plaintiff should have reasonably anticipated the risk involved. Brady v. Kane, 111 So.2d 472 (Fla. 3d DCA 1959). If it is found that a reasonable man would not have anticipated this risk, the "unsuspecting plaintiff" cannot be said to have consented to such danger and he therefore should be allowed to recover in full.
Conversely, if the jury determines that the plaintiff should have anticipated the particular risk and did not, then plaintiff's conduct should be subjected to comparative negligence apportionment principles.
Id. See also Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977). In Whorley v. Brewer, 315 So.2d 511 (Fla. 4th DCA 1975), the court held that notwithstanding evidence of negligence on the part of the deceased student, the issue of lack of supervision as a legal cause should have been submitted to a jury and that a jury being charged with the principles of comparative negligence might have determined the supervision by the school board and its employees to be inadequate and a legal cause of the accident.
It has been recognized that, because of the doctrine of comparative negligence, situations in which directed verdicts in negligence cases are appropriate will occur with less frequency. Petroleum Carrier Corp. v. Gates, 330 So.2d 751 (Fla. 1st DCA 1976). Furthermore, it is well established in Florida that issues of foreseeability *888 and proximate cause are generally for the jury. Florida Power and Light Company v. Lively, ___ So.2d ___ No. 81-1571 (Fla. 3d DCA Nov. 22, 1983) [8 FLW 2773, 2775]; Cassel v. Price, 396 So.2d 258, 260 (Fla. 1st DCA 1981); Daniels v. Weiss, 385 So.2d 661 (Fla. 3d DCA 1980). The facts in this case indicate that there was evidence upon which a jury could conclude that the school board (through its employees) negligently failed to provide proper supervision, instruction and equipment and that such negligence was a legal cause of the appellant's injuries. A new trial is required.
REVERSED and REMANDED.
CYCMANICK, M.F., Associate Judge, concurs.
COBB, J., concurs specially with opinion.
COBB, Judge, concurring specially.
While I concur with the majority result mandating a new trial, I cannot concur that there are facts in this case from which a jury could fault the school board for negligent failure to provide instruction or equipment. The negligence, if any, attributable to the coaches supervising the football practice herein concerned was that they improperly allowed an essentially noncontact agility drill to become elevated, through rowdyism, into a contact drill between players fully equipped and some, including plaintiff, who were not. This is the putative negligence proximately related to the injury.
But in my view, we are opening a Pandora's box that will seriously impair the reasonable operation of high school football programs if we hold, even by implication, that a school board can be held liable because all players out for football practice are not fully equipped at all times or are not instructed to refrain from striking hard objects with their faces.
Football is a contact sport and that fact is obvious to any school boy mentally competent to find the practice field. Many aspects of football practice do not require wearing a helmet and face guard. The agility drill in this case, if conducted as instructed, did not necessitate such head gear. The opportunity for injury is always present on a football field where bodies and footballs are in motion, and serious injuries can result from being struck in the face by a football during passing or punting practice where no face guard is used  but that should not result in a law suit against the school board. I believe this opinion should be expressly confined to contact drills in which players without full equipment are directed, or knowingly permitted contrary to direction, to engage.
NOTES
[1] It should be noted, however, that a teacher has no duty to supervise all movements of all students all the time. See Benton v. School Bd., 386 So.2d 831 (Fla. 4th DCA 1980). In Benton, no duty could be imposed on a teacher to accompany one child from the class to the bathroom (where her finger was crushed in the bathroom door by another child), since such a requirement would conflict with the greater duty to supervise generally.